PAUL BUSINESS SYSTEMS, INC.

V.

CANON U.S.A., INC., ET AL.

Record No. 900234

November 9, 1990

Present: All the Justices

*David N. Montague (Stuart A. Saunders; Montague, Saunders & Desaulniers*, on brief), for appellant.

*Conrad M. Shumadine (Thomas R. Watkins; Norman Moloshok; Richard H. Silberberg; Willcox & Savage; Patten, Wornom & Watkins; Dorsey & Whitney*, on brief), for appellees.

JUSTICE COMPTON delivered the opinion of the Court.

In this tort action arising from a business relationship, we determine the validity and enforceability of contractual provisions, so-called "forum selection clauses," which limit the place or court where potential causes of action may be brought between the parties. We have not addressed this specific issue before, although the question has been the subject of extensive litigation elsewhere.

In March 1989, appellant Paul Business Systems, Inc., filed a multi-count motion for judgment against Dyna-Fax, Ltd., seeking compensatory and punitive damages. In August 1989, the plaintiff amended its motion for judgment adding as defendants three Dyna-Fax employees, appellee Canon U.S.A., Inc., and two Ca-

non employees. The amended motion included counts for defamation, intentional interference with contractual and economic relations, and conspiracy to injure the plaintiff in its reputation and business.

In the amended motion, the plaintiff alleged it is a reputable dealer in business machines and other office products with a business territory covering the Peninsula area of the state. It asserted that Canon copiers is one of the major business lines it carries for which it is an authorized dealer offering comprehensive sales and service. The plaintiff alleged that it is in direct competition with Dyna-Fax as to sales territory, potential customers, and products and services offered. Plaintiff asserted that the ability of a copy machine marketer to provide service after the sale is "crucial" to making such sales.

The plaintiff further alleged that the corporate defendants, acting through the individual defendants, made certain false representations to plaintiff's customers. According to the allegations, defendants stated that the customers should refrain from "dealing" with the plaintiff "because it was about to go out of business;" that plaintiff "would not provide an ongoing service department;" that plaintiff "was about to be 'dropped' by Canon as one of its dealers;" and that plaintiff's "business was about to be taken over" by Dyna-Fax.

Asserting that "similar statements have been made repeatedly" by defendants, plaintiff alleged that the foregoing utterances were made at an office products exposition in Virginia Beach on March 30, 1988. Further, plaintiff asserted that on August 22, 1988, as well as "on numerous other occasions, both before and after that date," the defendants "combined, associated and conspired willfully and maliciously to defame and injure Plaintiff." The plaintiff asserted that defendants informed the purchasing agent for "the Newport News Shipyard (Division of Tenneco, Inc.)" on the August date that "the shipyard should not have the Plaintiff on its bidders list because the Plaintiff was in financial trouble, was about to lose its Canon distributorship, and that it would be unable to provide service of the product line."

Under the conspiracy count, the plaintiff alleged that the conduct of defendants constituted a violation of Code § 18.2-499 (misdemeanor to combine to injure others in their reputation, trade, business, or profession). Additionally, the plaintiff claimed

to be entitled to treble damages as provided in Code § 18.2-500 (civil relief afforded those injured by a violation of § 18.2-499).

Responding to the plaintiff's allegations, Canon filed a motion to dismiss. The two Canon employees named as defendants have not been served with process and have not appeared in this action. Urging dismissal, Canon contended that the action was brought in breach of plaintiff's contractual agreement "to litigate all disputes with Canon only in New York and, therefore, this Court lacks jurisdiction."

Upon consideration of the argument of counsel, the trial court ruled that the forum selection clauses in issue were valid, granted Canon's motion, and dismissed the Canon defendants from the action, but "without prejudice to the plaintiff's right to institute suit pursuant to the terms of the forum selection clause."

We awarded the plaintiff an appeal from the November 1989 dismissal order. The action remains pending in the trial court against the Dyna-Fax defendants, who have not appeared on appeal.

The clauses in question are contained in six dealer agreements between the plaintiff and Canon executed between 1983 and 1989. Pursuant to the agreements, the plaintiff was appointed as a non-exclusive authorized retail dealer of various models of Canon copiers and electronic office typewriters. The agreements were executed by the respective parties on the following dates:

| | Plaintiff | Canon |
|---|---|---|
| 1. | March 18, 1983 | March 30, 1983 |
| | Amended March 14, 1985 | May 1, 1985 |
| 2. | December 20, 1985 | April 14, 1986 |
| 3. | Signature undated | August 31, 1988 |
| 4. | February 22, 1989 | April 17, 1989 |
| 5. | February 22, 1989 | April 18, 1989 |
| 6. | February 22, 1989 | June 20, 1989 |

It should be noted that agreements 3, 4, 5, and 6 were all formed after the alleged causes of action arose on March 30, 1988 and August 22, 1988.

Agreements 1, 3, 4, and 6 contained the following forum selection clause. We have italicized the pertinent language.

"This agreement shall be governed by and construed in accordance with the laws of the State of New York, and *Dealer* consents to the jurisdiction and venue of any local, state or federal court located within the State of New York upon service of process made in accordance with the statutes of New York and the United States, and further *agrees that any and all causes of action hereunder by and between the parties hereto shall only have jurisdiction and venue in the local, state or federal courts in the State of New York.* Any suit between the parties relating to this Agreement, other than for payment of the purchase price of the Products, shall be commenced, if at all, within one (1) year of the date that it accrues."

Agreements 2 and 5 contained a forum selection clause with language slightly different from the other four. We have italicized the different language.

"This Agreement shall be governed by and construed in accordance with the laws of the State of New York, and Dealer consents to the jurisdiction and venue of any local, state or federal court located within the State of New York upon service of process made in accordance with the statutes of New York and the United States, and further agrees that any and all causes of action *whether or not arising under this Agreement* by and between the parties hereto shall only *be brought* in a local, state or federal court situated within the State of New York. Any suit between the parties relating to this Agreement, other than for payment of the purchase price of the Products, shall be commenced, if at all, within one (1) year of the date it accrues."

■ In the past, forum selection clauses were viewed with disfavor in most American courts. These clauses, purporting to confer jurisdiction on specifically named courts for adjudication of future controversies, were viewed as unenforceable as "contrary to public policy" and as an effort to "oust the jurisdiction" of the forum court. *The Bremen* v. *Zapata Off-Shore Co.*, 407 U.S. 1, 9 (1972); annot. 31 A.L.R.4th 404, 409. "Private individuals have no power to alter the rules of judicial jurisdiction." Restatement (Second) of Conflict of Laws § 80 comment a (1971 & Supp. 1989).

In recent years, however, numerous courts, state and federal, have adopted what has been called a "more modern view," 31 A.L.R.4th at 409, and a "more hospitable attitude toward forum-selection clauses." *The Bremen*, 407 U.S. at 10.

■ According to the modern view, which we now embrace, contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power. *See id.*, 407 U.S. at 10, 12; Restatement (Second) of Conflict of Laws (1988 Revisions) § 80 (Supp. 1989); 31 A.L.R.4th at 415. The rationale most often used to support application of the modern rule is that it comports with traditional concepts of freedom of contract and recognizes the present nationwide and worldwide scope of business relations which generate potential multi-jurisdictional litigation. *The Bremen*, 407 U.S. at 11.

■ Our preference for the foregoing view is consistent with the rule in Virginia, established in a similar context, that where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction. *Union Central Life Ins. Co.* v. *Pollard*, 94 Va. 146, 151-52, 26 S.E. 421, 422 (1896). *See generally Docksider, Ltd.* v. *Sea Technology, Ltd.*, 875 F.2d 762 (9th Cir. 1989) (applying modern rule and enforcing contract provision vesting jurisdiction and venue exclusively in Gloucester County, Virginia); *Bryant Elec. Co., Inc.* v. *City of Fredericksburg*, 762 F.2d 1192, 1196-97 (4th Cir. 1985) (applying Virginia law, determining that Virginia would follow the modern view, and enforcing a forum selection clause).

In the present case, the plaintiff recognizes that contractual forum selection clauses normally should be given effect. And, the plaintiff does not contend that the clauses at issue in the six agreements are the products of fraud or unequal bargaining power. The plaintiff assigns three reasons, however, why the clauses should not be enforced.

First, the plaintiff says that enforcement under these facts would be "unreasonable and unjust as a matter of law." Elaborating, the plaintiff argues that the "case has nothing to do with any contract existing between plaintiff and defendant, Canon." It ar-

gues that the case "would exist if there were no contract" because the charge is that defendants conspired to damage and destroy plaintiff's business in violation of Code §§ 18.2-499 and -500. Additionally, plaintiff asserts that no equivalent to § 18.2-499 exists in New York "and the acts allegedly violating it were committed in Virginia and within a 30-mile radius of Hampton." Also, plaintiff says that "Dyna-Fax, the other corporate defendant, is almost certainly not subject to the jurisdiction of the New York courts for purposes of this suit." Finally, plaintiff asserts that all of the non-party witnesses are Virginians, not subject to subpoena in New York.

Second, plaintiff contends that defendants' conduct generating "this action for intentional torts and conspiracy could not have been foreseen by Paul at the time of contracting." Thus, plaintiff says, "the obvious and serious inconvenience of New York as the venue for this trial requires that the forum clause be not enforced."

Third, plaintiff argues that enforcement of the forum selection provisions "would violate a strong public policy of Virginia."

■ Rejecting these contentions, we hold that the plaintiff has failed to establish that enforcement of the forum selection provisions would be unfair or unreasonable. An examination of the allegations of the amended motion for judgment demonstrates that this action flows directly from the several dealership agreements. Of course, the business relationship finds its basis in the agreements. Moreover, the plaintiff alleges that defendants falsely stated to customers that plaintiff was on the verge of being "dropped" by Canon as one of its dealers. Implicit in this charge is that termination of the plaintiff's dealership, as established by the agreements, was imminent. Additionally, the plaintiff charges that the shipyard's purchasing agent was informed that plaintiff was about to lose its dealership. Again, this makes a claim for wrongs arising straight from the agreements between the parties. Therefore, we find that these tort claims are covered by the "hereunder" language of the four agreements and certainly by the "whether or not arising" language of the other two.

■ Because the causes of action asserted arose "under" the agreements, the plaintiff will not be heard to claim unfairness and unreasonableness when at least three, and probably four, of the agreements were executed by the plaintiff's president *after* the causes of action arose. There is no claim that plaintiff's chief exec-

utive officer was inexperienced and, as stated, there is no claim of fraud or overreaching on the part of Canon's representative. The alleged inconvenience of litigation in New York, the anticipated difficulty in joining Dyna-Fax in a New York suit, and the likelihood of this action for intentional conduct stemming from the agreements, all should have been foreseen by the plaintiff which, with full knowledge of the existence of these causes of action, voluntarily entered into the agreements, at least one of which provided for a New York forum "whether or not" the causes of action arose under the agreement.

Finally, we do not agree that enforcement of the forum provisions would violate "a strong public policy of Virginia." The plaintiff has pointed to no Virginia case or statute which suggests that Virginia policy rejects forum selection clauses, and we have found none. Indeed, today we have expressly sustained the validity of such provisions, approved their use, and enforced them.

For these reasons, the judgment of the trial court will be

*Affirmed.*

JUSTICE RUSSELL, with whom JUSTICE WHITING and JUSTICE LACY join, concurring.

I concur in the result, but do not subscribe to all the reasoning contained in the majority opinion. I agree that traditional concepts of freedom of contract, in the absence of demonstrable unfairness, fraud, or unequal bargaining power, support the enforcement of forum selection clauses. Because the record here is devoid of evidence of fraud, unfairness, or overreaching, I would enforce the agreements as written. That holding, in my view, should end the case.

In agreements 2 and 5, the contracting parties agreed to litigate, exclusively in New York's state or federal courts, any and all causes of action that might arise between themselves "*whether or not arising under this Agreement*" (emphasis added). Therefore, it matters not whether Paul's claims against Canon arise under one or more of the six agreements. If the forum selection clauses are operative according to their plain language, as all members of the Court agree that they are, then agreements 2 and 5 alone suffice to accomplish the result for which Canon contends.

Unfortunately, the majority opinion reaches that result by a labored effort to characterize the plaintiff's claims of defamation, civil and criminal conspiracy, and tortious interference with contractual relations as causes of action arising under the parties' contracts. I think that reasoning to be untenable. It can hardly be argued that the parties, when entering into their agreements, contemplated that one of them would defame the business reputation of the other, telling customers that the injured party was about to go out of business, was approaching insolvency, or would not stand behind the products it sold. It is particularly unthinkable that Canon, having contractually bound itself to the plaintiff as a dealer, would tell customers that it intended to breach its own agreement by "dropping" the plaintiff. Each contracting party is entitled to assume that the other intends to perform the contract in good faith. *See* 11 Williston on Contracts § 1300 (3rd ed. 1968).

A cause of action arising under a contract is, by definition, a cause *ex contractu.*

> In both the civil and the common law, rights and causes of action are divided into two classes, —those arising *ex contractu* (from a contract), and those arising *ex delicto* (from a delict or tort). Where cause of action arises from breech (sic) of a promise set forth in contract, the action is *"ex contractu"*, but where it arises from a breech (sic) of duty growing out of contract, it is *"ex delicto"*.

Black's Law Dictionary 508 (5th ed. 1979) (citations omitted). Indeed, Canon had a duty not to defame or slander Paul, but that duty was imposed by the law of torts. It did not grow out of the promises in the contracts. It would have existed if the parties had never contracted at all.

Under agreements 1, 3, 4, and 6, the parties only contracted to litigate *ex contractu* causes of action in New York. Tortious and criminal conduct gives rise to causes of action *ex delicto*, which arise from wrongs entirely outside the contracts. The conduct charged by the plaintiff against Canon would, if proved, constitute a series of torts quite independent of the contracts between the parties. In Virginia, it also would constitute criminal conduct. It strains reason to hold that such conduct "arose under" the contracts. I wish to disassociate myself from that portion of the ma-

jority opinion which so holds because of my concern for the unfortunate effect of such a holding upon future cases.

The bench and bar should be secure in the knowledge that it is possible to draft forum selection clauses as broad as those in agreements 2 and 5, which embrace all causes of action, but that it is also possible to draft such clauses more narrowly, embracing only causes of action arising under the contract itself, and that the courts will respect the distinction.