## CIRCUIT COURT OF LOUDOUN COUNTY

DCDF, Inc.

v.

Cam-Net Data Systems, Ltd.
and Robert Moore

September 17, 1993

Case No. (Law) 14567

BY JUDGE JAMES H. CHAMBLIN

This case is before the Court on the Motion to Quash Process, the Plea in Bar and the Demurrer of Cam-Net Data Systems, Ltd., and the Motion to Quash Process and the Demurrer of Robert Moore. The Court heard evidence and oral argument on August 30, 1993, and has considered the briefs filed by counsel. Each pleading is addressed below.

### Motions to Quash Process of Cam-Net and Moore

At this stage of this suit, Cam-Net has merely filed a Motion to quash process. There has been no trial in this case; therefore, any factual basis for the Motion must be based entirely on the allegations of the Motion for Judgment and the evidence presented on August 30, 1993.

DCDF asserts jurisdiction over Cam-Net under the Virginia Long Arm Statute, specifically, Section 8.01–328.1(A)(1) (transacting business in the Commonwealth) and 8.01–328.1(A)(2) (contracting to supply services or things in the Commonwealth). The burden of proving *in*

*personam* jurisdiction over Cam-Net rests with DCDF. *McNutt* v. *General Motors Acceptance Corp.*, 298 U.S. 178, 56 S. Ct. 780 (1936).

DCDF asserts that this Court has jurisdiction over Cam-Net in this lawsuit arising out of an Agreement for Requirements Assessment/ General Design Services dated March 2, 1992, between Cam-Net and DCDF ("Contract") which contains the following provision:

> 24. *Governing Law.* This Agreement shall be governed by and construed in accordance with the laws, other than choice of law rules, of the State of Virginia, U.S.A.

DCDF argues that this provision is a "forum selection clause," and the validity of such clauses was upheld by the Virginia Supreme Court in *Paul Business Systems* v. *Canon U.S.A., Inc.*, 240 Va. 337 (1990). I agree that forum selection clauses are valid under Virginia law, but I do not agree that this provision is a "forum selection clause." It says nothing about "jurisdiction" or "venue" or where actions under the Contract shall be "brought" as provided in the clauses at issue in *Paul*. This provision is merely a governing or choice of law provision and has nothing to do with jurisdiction or venue of actions arising under the Contract. Therefore, it provides no basis for jurisdiction in this Court.

DCDF also argues that under the Contract Cam-Net has in a single transaction transacted business in Virginia and contracted to supply services or things in Virginia. I agree with this assertion, although much more strongly as to the former than as to the latter. As to the latter, under the Contract DCDF provided the services while Cam-Net basically provided working space for DCDF on site in Canada, an interfacing Cam-Net officer and to pay DCDF for its services. Evidence was presented that Cam-Net had made payments to DCDF in Virginia. Coupled with the other considerations discussed below concerning transacting business in Virginia, making a payment in Virginia can be considered supplying a thing in Virginia under Section 8.01–328.1(A)(2).

In addition to the payments made by Cam-Net to DCDF in Virginia, I am of the opinion that the following create a *prima facie* showing of jurisdiction in this Court to the extent that the Motion to Quash must be denied at this time.

(1) Cam-Net sought and agreed to accept services from DCDF under the Contract which does not provide that all services be performed in Canada.

(2) The Contract does not by its nature or its terms require all work thereunder to be preformed in Canada.

(3) As the work was actually done, DCDF employees in Virginia were involved in the services provided under the Contract even if it was limited to merely reviewing work done in Canada.

(4) Of as little significance as it may be, there was evidence presented that the Contract was actually made in Virginia.

(5) DCDF has alleged that Cam-Net had an agent in Virginia transacting business for it. The evidence presented was conflicting on the agent's authority and activities.

(6) The Contract does provide that Virginia law will govern.

(7) When Cam-Net agreed to accept the services of DCDF under the Contract which did preclude DCDF from doing work under the Contract in Virginia, knowing that some of the work would be done in Virginia (and there is evidence that some work was done in Virginia), Cam-Net purposefully availed itself of the privilege of conducting activities in Virginia.

I am of the opinion that Cam-Net had the minimum contacts under the Contract with Virginia and maintenance of DCDF's claims under the Contract do not offend traditional notions of fair play and substantial justice. Therefore, Cam-Net's Motion to Quash Process is denied at this time as to all the claims of breach of the Contract by Cam-Net as alleged in the motion for judgment.

However, I take a different view of the "Contract Interference" claim in Count Five of the motion for judgment. Paragraph 48 of the motion for judgment alleges intentional interference with the Contract. It is an allegation of a tort; not a breach of contract. There are no allegations and there was no evidence presented that any of the acts constituting such interference occurred in Virginia.

DCDF argues that under *Paul* if the interference claim arises out of the Contract and this Court has jurisdiction under the long arm statute for claims under the Contract, then it also has jurisdiction over the tortious interference claim. I disagree. First, the holding in *Paul* is based upon the language of the contracts which specifically provided for "any and all causes of action (under the agreement) by and between the parties shall only have jurisdiction and venue . . . in . . . New York"

and "any and all causes of action whether or not arising under this Agreement by and between the parties hereto shall be brought . . . in . . . New York." These are forum selection clauses. For reasons stated earlier in this opinion, the Contract has no forum selection clause. Second, the decision in *Paul* is based upon the language of the contracts recited above. No such language appears in the Contract.

I agree with the dissent in *Paul*. The majority in *Paul* did not have to rest its decision on the "labored effort" to find that certain tort claims (one being tortious interference with contract) arose under the parties' contracts. *Paul* does not stand for the broad proposition advanced by DCDF that jurisdiction lies in this case over the tort claim merely because it arises out of the contract. Furthermore, I find it difficult to argue that Moore's alleged tortious interference of contract arose out of the Contract when (a) he is not a party to the Contract and (b) there is no contractual provision prohibiting Moore from interfering with the Contract.

For the foregoing reasons, Moore's Motion to Quash Process is granted. Moore may have had a duty not to interfere with the Contract, but it arose under the law of torts, not under the Contract. If Moore tortiously interfered with the Contract, then it is a tort, and one committed some place other than Virginia. Hence, Virginia has no jurisdiction over the tort claim.

For similar reasons, this Court has no jurisdiction over DCDF's claim of tortious interference with contract against Cam-Net assuming that DCDF can assert such a claim against Cam-Net. Therefore, Cam-Net's Motion to Quash Process is granted as to the tort claim.

### Plea in Bar of Cam-Net

Cam-Net asserts that DCDF cannot recover for loss of work under the Contract because DCDF completed its work under the Contract and has been paid the compensation due under the Contract. At the hearing Harry J. Piccariello, President of DCDF, admitted that the work had been completed by DCDF under the Contract and that DCDF had been paid, but there was a dispute over some "reimbursement expenses." This is an admission by an agent of DCDF and binding upon it. Therefore, the Plea in Bar is granted as to all claims by DCDF for sums due under the Contract other than "reimbursement expenses."

### Demurrer of Moore

Moore demurs on the grounds that (1) the motion for judgment fails to clearly inform him of the true nature of the claim against him, (2) the motion for judgment fails to allege any facts to support a finding that Moore acted in any capacity other than as president or an employee of Cam-Net and (3) Moore cannot be held personally liable for the acts of the corporate defendant, Cam-Net.

The Court does not need to rule on this Demurrer in light of the granting of Moore's Motion to Quash. However, I am of the opinion that the Demurrer should be sustained on all three grounds. There are no facts alleged that show that Moore was acting other than as an employee of Cam-Net. There are no allegations that he acted outside of his scope of authority. Moore is not a party to the Contract. An employee of a corporate party to a contract acting within his scope of authority cannot tortiously interfere with his corporate employer's contract.

### Demurrer of Cam-Net

#### (A) *To Count One (First Breach of Contract)*

In this count DCDF alleges that Cam-Net breached the Contract by failing to provide DCDF the full Contract work and "follow on" work. Cam-Net demurs and asserts that the Contract does not provide DCDF with the right to any "follow on" work and that any such lost work would be consequential damages to which DCDF is not entitled.

The Demurrer is sustained as to Count One as to the claim under the Contract to "follow on" work because I can find nothing in the Contract that binds Cam-Net to provide DCDF with "follow on" work. However, the Demurrer is overruled as to work to be done under the Contract because DCDF has alleged that Cam-Net failed to meet its Contract obligations.

#### (B) *To Count Two (Second Breach of Contract)*

In the second count DCDF alleges that Cam-Net breached the Contract by employing KnowledgeLab, Shay and Morelli. Cam-Net in its demurrer asserts that paragraph 22 of the Contract prohibits future employment by a party thereto, but that the "KnowledgeLab Consulting Agreement" dated March 9, 1992, between DCDF and KnowledgeLab Partners, Ltd. (the "Subcontract") shows that KnowledgeLab, Shay and Morelli had not been employed by DCDF, but were indepen-

dent contractors. See paragraph 3 of the Subcontract, which is attached to the Motion for Judgment as Exhibit C.

There are no facts alleged in the Motion for Judgment that would support the legal conclusion that KnowledgeLab, Shay and Morelli were employees of DCDF. The Subcontract specifically recites that KnowledgeLab was an independent contractor. At most it would appear from the Motion for Judgment and exhibits attached thereto that Shay and Morelli were partners in KnowledgeLab. A mere allegation that KnowledgeLab, Shay and Morelli were employees of DCDF might be sufficient if it were not for the Subcontract which was attached as an exhibit to the Motion for Judgment.

The facts as alleged do not show a violation of the loyalty provisions of the Contract by Cam-Net by its employing KnowledgeLab, Shay and Morelli. Therefore, the Demurrer is sustained to Count Two.

### (C) To Count Three (Third Breach of Contract)

In this count DCDF alleges that Cam-Net breached the Contract by disclosing prior to completion of the Contract to parties outside Cam-Net confidential work specifications generated by DCDF under the Contract. Cam-Net demurs on the basis that the Contract does not grant DCDF a right to "follow on" work and "parties outside Cam-Net" are not identified.

This alleged breach has nothing to do with DCDF's claim to "follow on" work. It involves a breach of the confidentiality and use of results provisions of the Contract. However, I do feel that the failure to identify the "parties outside Cam-Net" does not clearly inform Cam-Net of the true nature of the claim as required by Rule 1:4(d). The Demurrer to Count Three is, therefore, sustained.

### (D) To Count Four (Fourth Breach of Contract)

In this count DCDF alleges that in violation of the Contract Cam-Net permitted "Non-DCDF entities" to supervise, manage or cause to be performed substantial work to be performed by DCDF. Cam-Net demurs because the "Non-DCDF entities" are not identified and the employee-independent contractor loss of "follow-on" work arguments asserted as to other counts as addressed above.

The loss of "follow-on" work or employee versus independent contractor argument does not have anything to do with this claim. DCDF claims that Cam-Net violated paragraph 16 of the Contract by letting "Non-DCDF entities" perform certain work, but DCDF does not allege

the identity of the "Non-DCDF entities" or what work they performed. This is deficient under Rule 1:4(d).

The Demurrer is sustained to Count Four.

**(E)** *To Count Five (Fifth Breach of Contract)*

In this Count DCDF alleges that employees of Cam-Net violated the loyalty provisions of the Contract by influencing Cam-Net not to permit DCDF to complete the phases of the Contract or to perform "follow-on" work, by influencing Cam-Net to substitute Knowledge-Lab, Shay and Morelli for DCDF and by using KnowledgeLab, Shay and Morelli to interfere with the Contract.

The Court has ruled that DCDF only has jurisdiction over Cam-Net for claims arising out of the Contract. It has no jurisdiction for alleged tortious activity not committed in Virginia involving the parties. The alleged claim in Count Five is, in my opinion, at most a breach of contract claim against Cam-Net for not permitting DCDF to complete the Contract. Such a claim is suspect at the least in light of Mr. Piccariello's testimony at the hearing that all the work under the Contract had been done. If DCDF is trying to assert a claim against employees of Cam-Net, then it must fail because other than Moore, no employees are named as defendants.

For reasons stated previously, the Contract provides DCDF with no right to "follow on" work. If DCDF attempts to assert a claim against employees of Cam-Net for "influencing" Cam-Net to take certain actions, it must fail because at most a tort is alleged over which this Court has no jurisdiction.

The Demurrer to Count Five is sustained.

**(F)** *To Count Six (Sixth Breach of Contract)*

In this Count DCDF alleges that "Cam-Net has used, misappropriated and otherwise damaged DCDF and has failed to indemnify DCDF for its damages arising from the loss of intellectual property and other property as outlined above." Cam-Net has demurred on the grounds that DCDF has not specified the intellectual property and indemnity provisions of the Contract do not extend to DCDF's claim for loss of intellectual property.

This count utterly failed to clearly inform Cam-Net of the true nature of DCDF's claim as required by Rule 1:4(d) because DCDF does not allege with specificity what intellectual or other property has been damaged. As pleaded I cannot ascertain whether the indemnity provi-

sion of the Contract applies because DCDF has not particularized the loss or damage for which it claims indemnity.

The Demurrer to Count Six is sustained.

## Order

Let Mr. Price prepare an order consistent herewith which grants DCDF leave to file an Amended Motion for Judgment, if it be advised, on or before October 1, 1993.