## CIRCUIT COURT OF FAIRFAX COUNTY

Rick Khosla

v.

Global Mortgage, Inc.

November 8, 2006

Case No. (Law) 2006-8458

BY JUDGE R. TERRENCE NEY

This matter came before the Court on Defendant Global Mortgage, Inc.'s ("Global Mortgage") Motion to Dismiss or, in the Alternative, Stay Pending Arbitration between the Parties. After oral argument, the Court took the matter under advisement.

*Facts*

On July 7, 2006, the Plaintiff, Rick Khosla, filed his Motion for Judgment against Global Mortgage alleging fraud and breach of contract. Pl. Comp. 4-5, ¶¶ 18, 20-23. The basis for these claims stems from a business arrangement entered into between Khosla and Global Mortgage contained in an Employment Agreement ("Agreement") of December 12, 2005. Def. Ex. 1.

Global Mortgage conducts business in multiple states with its principal place of business in Clearwater, Florida. Pl. Comp. 1. Global Mortgage hired Khosla as its location agent, or branch manager, to transact business in Chantilly, Virginia. *Id.* Global Mortgage allegedly represented to Khosla that it had the necessary mortgage licenses required to operate in Virginia. *Id.* at 2,

¶¶ 2, 8. Relying on Global Mortgage's assurance of proper licensing, Khosla operated the branch mortgage office for several months. *Id.* at 2-4, ¶¶ 7-9, 11, 13, 14.

According to Khosla, after not receiving any licensing documents from Global Mortgage, he contacted the Virginia State Corporation Commission and discovered that, because of violations of various Virginia laws and business regulations, Global Mortgage was denied a license for operating in the state of Virginia. *Id.* at 3, ¶¶ 10-12. Khosla contacted Global Mortgage about the licensing and was told that the State Corporation Commission was conducting an audit of licensing requests and that he should terminate his operation until the audit was completed. *Id.* at 4, ¶ 14.

Khosla now claims damages for his franchise setup of $4,751, four months of franchising fees totaling $6,000, office construction and furnishings totaling $150,000, a five-year lease commitment, and salaries for five loan officers. *Id.* at 2, ¶¶ 3-6. In total, Khosla is seeking $270,000 in actual and consequential damages as well as $350,000 in punitive damages. *Id.* at 5.

Global Mortgage filed a Motion to Dismiss or, in the Alternative, a Stay Pending Mandatory Contractual Arbitration between the Parties. Specifically, Global Mortgage cites the Arbitration clause in the Agreement which states:

> All disputes that cannot be resolved by the parties shall be submitted to binding arbitration to a single arbitrator under the rules and regulations of the American Arbitration Association or another nationally recognized arbitration organization and judgment on the arbitration award may be entered in any court of competent jurisdiction.

Def. Ex. 1, 4, ¶ 5.

Additionally, the Agreement prescribes venue and choice of law by a clause which states "To the extent permitted, Florida law governs this Agreement with venue set for Pinellas County, Florida." Def. Ex. 1, 5, ¶ 9.

*Analysis*

The issue before the Court is whether arbitration, venue, and choice of law clauses are otherwise enforceable in a fraudulently induced contract.

Khosla claims fraud in the inducement of a contract and breach of contract. Pl. Comp. 4-5, 5-24. Because the alleged wrongs and damages occurred in Virginia, Khosla asserts jurisdiction in this Court. Pl. Comp. Global Mortgage, however, contends that the contract has severable arbitration and

venue clauses which require binding arbitration in Pinellas County, Florida, pursuant to Florida law. Def. Mot. to Dismiss or, in the Alternative, Stay Pending Mandatory Contractual Arbitration Between the Parties 1, ¶¶ 2-5.

As a general rule, a party charged with fraudulent inducement of a contract may not rely on the terms of that contract as a defense. The contract being based on fraud, is nonexistent, a nullity. See Black, J., in *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 at p. 412, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967) (dissenting). Yet, in *Buckeye Check Cashing, Inc. v. Cardegna*, the United States Supreme Court reached a different conclusion in a case with a fact pattern strikingly similar to that presented here. *Buckeye Check Cashing, Inc. v. Cardegna*, 126 S. Ct. 1204, 163 L. Ed. 2d 1038 (2006). There, the Plaintiffs brought a class action in state court claiming that Buckeye Check Cashing, Inc., "charged usurious interest rates and … violated various Florida lending and consumer-protection laws." *Id.* at 1207. The defendant moved to compel arbitration, which motion was denied by the trial court. *Id.* On appeal, the Supreme Court divided challenges to arbitration clauses into two types. The first type directly challenges the arbitration clause itself. *Id.* at 1208. The second type, which is the challenge Khosla issues here, "challenges the contract as a whole, either on a ground that directly affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that the illegality of one of the contract's provisions renders the entire contract invalid." *Id.* The Supreme Court, pointing to settled precedent, *see Prima Paint Co. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967); *Southland Co. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984), decided the case by stating three distinct propositions. *Buckeye*, 126 S. Ct. at 1209. First, "an arbitration provision is severable from the remainder of the contract." *Id.* Second, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator." *Id.* Third, "this arbitration law applies in state as well as federal courts." *Id.*

Here the arbitration provision plainly is severable from the Agreement. Furthermore, since Khosla has challenged the contract as a whole and not specifically the arbitration clause, *Buckeye* dictates that it is for an arbitrator and not a court to consider the issue of the Agreement's validity. And, also according to *Buckeye*, this dictate is binding on Virginia courts.

Khosla then argues that the arbitration clause itself does not specifically mention venue or choice of law. Pl. Mot. to Den. Def. Mot. to Dismiss or, in the Alternative, Stay Pending Mandatory Contractual Arbitration Between the Parties 1-2, ¶¶ 3-4. Khosla contends that, if arbitration is ordered, then Virginia arbitrators, who are more familiar with Virginia law, would be more

appropriate because the branch office was to be in Virginia, the agreement was signed in Virginia, and the Virginia State Corporation Commission was to issue licensing documents. *Id.* at 2, ¶ 4. Contrariwise, Global Mortgage relies upon the separate venue and choice of law provisions in the Agreement. Def. Resp. to Pl. Mot. to Den. 5.

None of the cases relied on by Global Mortgage addressed venue or choice of law provisions. In *Buckeye*, both parties were from or operated in Florida and the controversy arose in Florida. *Buckeye*, 126 S. Ct. at 1207. In *Southland Corp. v. Keating*,[1] the plaintiffs were 800 California franchisees and the controversy arose in California. *Id.* at 4, 855. In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,[2] the arbitration clause specifically mandated arbitration in the City of New York. *Id.* at 398, 1803.

In *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, the Virginia Supreme Court addressed issues of venue and choice of law clauses in a contract. *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 240 Va. 337, 397 S.E.2d 804 (1990). In *Paul*, the plaintiff brought a motion for judgment alleging "defamation, intentional interference with contractual and economic relations, and conspiracy to injure the plaintiff in its reputation and business." *Id.* at 339, 805. The defendant filed a motion to dismiss and "contended that the action was brought in breach of plaintiff's contractual agreement 'to litigate all disputes with Canon only in New York and, therefore, this Court lacks jurisdiction'." *Id.* at 340, 806. The court stated:

> According to the modern view, which we now embrace, contractual provisions limiting the place or court where potential actions between the parties may be brought are prima facie valid and should be enforced, unless the party challenging enforcement establishes that such provisions are unfair or unreasonable, or are affected by fraud or unequal bargaining power.

*Id.* at 342, 807.

---

[1] In *Southland*, 7-Eleven franchisors were seeking to compel arbitration based on the arbitration clause in the contract it had with California franchisees. *Southland Co. v. Keating*, 465 U.S. 1, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).

[2] The issue in *Prima Paint* arose when the seller of a multi-state paint business alleged the purchaser breached the sales contract. *Prima Paint Co. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S. Ct. 1801, 18 L. Ed. 2d 1270 (1967).

As to choice of law provisions the court further stated: "that where parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction." *Id.*

Yet the venue and choice of law provisions here are not contained in the arbitration provision. As a result, their very validity is challenged in that they are part of an unenforceable contract because it was fraudulently induced. As such, unlike the arbitration clause, they do not stand alone and are not separately enforceable. Accordingly, they do not enjoy under the law the separate status as does the arbitration provision. As a result, they are unenforceable.

### Conclusion

For these reasons, the defendant's Motion to Stay this action pending arbitration is granted. Arbitration is to take place in Virginia with Virginia law controlling.