**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-2090**

---

GMS INDUSTRIAL SUPPLY, INC.,

    Plaintiff − Appellee,

  v.

WESTLY L. GREER,

    Defendant – Appellant,

  and

G&S SUPPLY, LLC; SABRINA GREER; GREER GROUP, LLC; GREGORY K. SPIRES; COUNTRY ROADS, LLC; THOMAS HAYES; MIKE WELTON; WARTECH INDUSTRIES, LLC; HMC SUPPLY, LLC,

    Defendants.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Roderick Charles Young, District Judge. (2:19−cv−00324−RCY−LRL)

---

Submitted: November 9, 2023        Decided: September 3, 2024

---

Before DIAZ, Chief Judge, AGEE, Circuit Judge, and TRAXLER, Senior Circuit Judge.

---

Vacated and remanded by unpublished opinion. Chief Judge Diaz wrote the opinion, in which Judge Agee and Senior Judge Traxler joined.

---

**ON BRIEF:** Robert W. McFarland, V. Kathleen Dougherty, Jeanne E. Noonan, Norfolk, Virginia, Sean A. McClelland, MCGUIREWOODS LLP, Washington, D.C., for Appellant. William A. Lascara, Thomas S. Berkley, Jeffrey D. Wilson, PENDER & COWARD, P.C., Virginia Beach, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Chief Judge:

GMS Industrial Supply, Inc. sued its former employee, Westly Greer, after it discovered that he'd secretly founded and operated two competitor companies while serving as GMS's Director of Sales.

A jury found Greer liable for violating Virginia's computer trespass and trade secrets statutes and awarded judgment to GMS on those claims. Before and after the verdict, Greer moved for judgment as a matter of law on both claims. He argued that because his offending conduct occurred in Colorado, neither Virginia tort statute applied. Virginia courts traditionally apply the law of the jurisdiction where the perpetrator committed the tort but allow parties to choose a different jurisdiction's law by contract. The district court denied Greer's motions and found that a choice-of-law provision in his employment contract superseded Virginia's traditional choice-of-law rules.

Greer appeals. Because we agree with him that the contractual provision doesn't cover GMS's statutory computer trespass and trade secrets claims, we vacate the judgment and remand for further proceedings.

I.

A.

GMS is a Virginia-based sales company that supplies industrial products to military bases. It employs sales agents nationwide, and it supervises those agents remotely.

3

GMS hired Greer as a sales agent in 2011. The company promoted Greer several times, and he became GMS's Director of Sales in 2015. That year, Greer moved to Colorado, where he worked for GMS remotely.

Greer and another GMS employee then founded two competitor companies that sold industrial products to GMS's customers. Greer didn't tell GMS about the companies, and he continued to operate them while serving as GMS's Director of Sales.

In January 2019, Greer quit his position as Director of Sales, and GMS hired him as an independent sales agent. Greer signed an Independent Sales Agent Agreement, which like his previous GMS employment contracts, required him to keep GMS's proprietary information confidential.

But unlike his prior contracts, the Agreement contained a choice-of-law provision, which stated that it "shall be governed by and construed in accordance with the laws of the State of Virginia . . . ." J.A. 1412. It also contained a forum-selection clause, requiring the parties to sue in the state or federal courts in Virginia for "any action . . . relating to or arising from [the] Agreement." J.A. 1412.

When GMS learned of Greer's clandestine dealings in April 2019, it terminated the Agreement. It also sent Greer a cease-and-desist letter ordering him to return his GMS computers and to cease using or disclosing GMS's confidential information.

Greer eventually returned the computers, but not before downloading and deleting thousands of documents from GMS's servers.

4

B.

GMS sued Greer, the competitor companies, and Greer's other GMS confederates who simultaneously worked for the competitor companies.  As relevant here, GMS's complaint raised claims for misappropriation of trade secrets under the Virginia Uniform Trade Secrets Act, Va. Code Ann. § 59.1-336 *et seq.*, and a violation of Virginia's computer trespass statute, the Virginia Computer Crimes Act, Va. Code Ann. § 18.2-152.1 *et seq.*[1]

After discovery, Greer moved for sanctions against GMS.  Greer argued that GMS's trade secret and computer trespass claims weren't cognizable because his offending conduct happened in Colorado.

The district court denied the motion, and the case proceeded to trial.  Before trial, Greer orally moved for judgment as a matter of law.  The district court denied Greer's motion as to the trade secret and computer trespass claims.  It didn't explain its decision but referred to the forum selection clause in the Agreement during the motion hearing.

At the end of trial, Greer renewed his motion for judgment as a matter of law.  The district court denied the motion as to the trade secret and computer trespass claims.  And it instructed the jury on both claims, rejecting Greer's challenges to the jury instructions.

---

[1] GMS also brought corresponding claims under the federal Defend Trade Secrets Act, 18 U.S.C. § 1832 *et seq.*, and the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*  Those claims aren't relevant to this appeal, and any reference to GMS's trade secret and computer trespass claims in this opinion refers to its claims under Virginia law.

5

The jury ultimately reached a verdict against Greer on both claims. It awarded GMS no damages on the trade secrets claim and $50,000 in statutory damages on the computer trespass claim. The court entered judgment, and this appeal followed.

## II.

Greer argues that he was entitled to judgment as a matter of law on the trade secrets and computer trespass claims, a contention that we review de novo. *Legacy Data Access, Inc. v. Cadrillion, LLC*, 889 F.3d 158, 164 (4th Cir. 2018). In doing so, we "view[] the evidence in the light most favorable to [GMS], the prevailing party in the trial court." *Id.*

## A.

"A federal court hearing a diversity claim must apply the choice-of-law rules of the state in which it sits." *Res. Bankshares Corp. v. St. Paul Mercury Ins.*, 407 F.3d 631, 635 (4th Cir. 2005). Because this appeal arises from a complaint filed in the Eastern District of Virginia, we look to Virginia's choice-of-law rules.

Virginia applies the principle of *lex loci delicti* to determine the applicable substantive law in tort suits. *Demetres v. E.W. Constr., Inc.*, 776 F.3d 271, 273 (4th Cir. 2015). According to that principle, "the law of the place of the wrong" governs the substantive cause of action. *Milton v. IIT Rsch. Inst.*, 138 F.3d 519, 521 (4th Cir. 1998). So Virginia courts apply the law of the jurisdiction where the perpetrator committed the tort, *not* the jurisdiction where the victim felt the harm. *Id.* at 522. Here, that's Colorado.

That said, Virginia allows contracting parties to choose the laws of a different jurisdiction by contract. *See Paul Bus. Sys., Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804, 807 (Va. 1990) ("[W]here parties to a contract have expressly declared that the agreement shall be construed as made with reference to the law of a particular jurisdiction, we will recognize such agreement and enforce it, applying the law of the stipulated jurisdiction."). "Virginia law looks favorably upon choice[-]of[-]law clauses in a contract, giving them full effect except in unusual circumstances." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 624 (4th Cir. 1999).

## B.

Greer and GMS agree on these basic legal principles, but they diverge on their application to this case. Greer raises two arguments for why the choice-of-law provision in the Agreement doesn't apply: (1) most of his tortious conduct happened before he signed the Agreement, or after GMS terminated it, and (2) the choice-of-law provision doesn't reach tort claims created by statute.

### 1.

GMS argues that Greer didn't adequately present the timing issue to the district court, and we agree. Though Greer argued many times that his conduct fell outside the scope of the Agreement or that the Agreement applied only to breach of contract claims, *see* J.A. 458–59 (sanctions motion); J.A. 718 (jury instruction objections); J.A. 727–28 (bench brief); J.A. 1017–22, 1028–30 (pre-trial Rule 50 motion); J.A. 1250–52 (post-trial Rule 50 motion), he didn't raise that his tortious conduct happened before and after the Agreement was in effect.

7

The record shows Greer only referenced his pre-Agreement conduct once in his arguments. In his reply brief in support of his sanctions motion, Greer argued that "[his] Employment Contract did not contain a choice[-]of[-]law provision," so the Agreement provision shouldn't apply. J.A. 511. In the context of a 1500-page record, though, that single sentence isn't sufficient to preserve the issue. *See Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 315 (4th Cir. 2017) (noting that a party forfeits an issue if its brief takes only a "passing shot" at it). And the district court didn't otherwise address the timing issue. *See Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 604 (4th Cir. 2004) (holding that we may consider issues "specifically decided by [the] district court").

Greer argues that this theory was "plainly encompassed by the submissions in the underlying litigation." Reply Br. at 19 (quoting *United States v. Boyd*, 5 F.4th 550, 556 (4th Cir. 2021)). But we disagree that he put the district court on notice of the timing issue. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 469 (2000) ("[T]he general rule that issues must be raised in lower courts in order to be preserved as potential grounds of decision in higher courts . . . requires that the lower court be fairly put on notice as to the substance of the issue."). Instead, Greer mainly argued that the choice-of-law provision applied only to "dispute[s] under this [A]greement," J.A. 1028–29, and thus wasn't "broad enough to encompass tort claims," J.A. 1251. But that has nothing to do with his claim that his conduct occurred before and after the Agreement.

Because Greer didn't raise the timing objection to the district court, we need not consider it. *See Sines v. Hill*, 106 F.4th 341, 349 (4th Cir. 2024) ("[I]ssues raised for the

8

first time on appeal are generally not considered absent exceptional circumstances." (cleaned up)).

We've carved out two limited exceptions to this rule. "When a party in a civil case raises an argument for the first time before us, we may reverse only if the newly raised argument establishes fundamental error or a denial of fundamental justice." *Tarashuk v. Givens*, 53 F.4th 154, 167 (4th Cir. 2022) (cleaned up).

But even if Greer could satisfy this demanding standard, we've repeatedly refused to undertake such review if the party doesn't argue for it. *See Makdessi v. Fields*, 789 F.3d 126, 132 (4th Cir. 2015); *In re Under Seal*, 749 F.3d 276, 292 (4th Cir. 2014). Greer doesn't argue that the district court fundamentally erred or that its decision effected a denial of fundamental justice. So he's abandoned the issue, and we decline to consider it.

2.

With the timing issue behind us, we proceed to whether the choice-of-law provision encompasses GMS's computer trespass and trade secrets claims. It doesn't.

We start, as we must, with the text of the Agreement. It provides:

> This Agreement shall be governed by and construed in accordance with the laws of the State of Virginia without giving effect to any choice of law provisions. Any dispute that should arise will be handled accordingly. Both parties agree that the exclusive venue for any action, demand, claim or counterclaim relating to or arising from this Agreement, shall be in the state or federal courts located in Virginia Beach, Virginia and that such courts shall have personal jurisdiction over the parties to this Agreement.

J.A. 1412.

The parties advance two readings of the provision. According to GMS, the provision governs "'[a]ny dispute that should arise' between the parties." Appellee's Br.

9

at 6. But according to Greer, the provision "covers only those [claims] 'arising from' the 2019 [A]greement itself." Appellant's Br. at 16.

Greer has the better argument. Though the "any dispute that should arise" language may refer to any dispute between the parties, as GMS argues, that clause is bookended by clauses referring specifically to the Agreement. Virginia law commands us to "consider the document as a whole," *Pocahontas Mining Ltd. Liab. Co. v. CNX Gas Co.*, 666 S.E.2d 527, 531 (Va. 2008), and when we read the sentences in the provision together, we conclude that the provision applies only to claims that relate to or arise from the Agreement.

Additionally, if any term is omitted from the contract, Virginia courts consider that as "evidence that the parties intended to exclude that term." *Id.* Though the parties could have explicitly stated their intent to cover all claims between them, they didn't. So we decline to read that language into the contract for the benefit of GMS, the contract's drafter. *See generally Winn v. Aleda Constr. Co.*, 315 S.E.2d 193, 195 (Va. 1984) ("[A] contract will be construed more strictly against the party who prepared it.").

What claims relate to or arise from the Agreement is a trickier question. Though we could read the provision to reach only contract claims, we think it's broad enough to encompass contract-related tort claims as well. *See Hitachi*, 166 F.3d at 628 (holding that "[w]here a choice[-]of[-]law clause in the contract is sufficiently broad to encompass contract-related tort claims such as fraudulent inducement," the clause determines what substantive law governs those tort claims).

First, the provision references "[a]ny dispute that should arise." J.A. 1412 (emphasis added). While that dispute must be tethered to the Agreement, the word "any"

10

favors a broad construction. *See United States v. Gonzales*, 520 U.S. 1, 5 (1997) ("Read naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" (quoting *Any*, Webster's Third New International Dictionary 97 (Philip Babcock Gove, ed., 1976))); *see also Romero v. Barr*, 937 F.3d 282, 292–93 (4th Cir. 2019) (collecting cases construing the term "any" to have a broad meaning).

And under Virginia law, "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *PMA Cap. Ins. v. US Airways, Inc.*, 626 S.E.2d 369, 372–73 (Va. 2006) (cleaned up). We thus credit the parties' inclusion of "any" and conclude that they included it to expand the scope of the provision.

Second, while the forum-selection clause isn't dispositive, it would be incongruous to require the parties to sue in Virginia, where the contract claims would be resolved under Viginia law and any *related* tort claims wouldn't be. *See Zaklit v. Glob. Linguist Sols., LLC*, No. 1:14-cv-314, 2014 WL 3109804, at *11 (E.D. Va. July 8, 2014) ("The only reasonable inference is that the parties intended to provide for an efficient and businesslike resolution of possible future disputes by choosing a single forum and a single body of law to govern all claims . . . .").

But even if we interpret the choice-of-law provision to encompass contract-related tort claims, we can't agree that GMS's trade secrets and computer trespass claims relate to or arise from the Agreement.

*Ulloa v. QSP, Inc.*, 624 S.E.2d 43 (Va. 2006), guides us. There, the Supreme Court of Virginia considered whether a contractual fee-shifting provision encompassed the

11

plaintiff's misappropriation of trade secrets claim, also brought under the Virginia Uniform Trade Secrets Act. *Id.* at 49. The jury awarded judgment to the plaintiff company on its trade secrets claim, *id.* at 47, and the company sought attorneys' fees in accordance with a provision in the defendant's employment contract that stated: "[I]f I violate this Agreement . . . I will be responsible for all attorneys' fees, costs and expenses incurred by [the company] *by reason of any action relating to this Agreement.*" *Id.* at 46.

The court held that the "misappropriation of trade secrets claim does not qualify as 'any action relating' to the parties' contract as contemplated by the contract's fee-shifting provision." *Id.* at 49. That's because "[t]hat language expressly limits 'any action' to one '*relating*' to their agreement and thereby *excludes an independent action such as one under the Act.*" *Id.* (second emphasis added).

Though *Ulloa* concerns a different context, its reasoning is on-point. Of course, it involves a claim under the Virginia Uniform Trade Secrets Act, one of the very statutes at issue here.

We also note that the Virginia Uniform Trade Secrets Act creates separate remedies, independent of the Agreement. It authorizes attorneys' fees, Va. Code Ann. § 59.1-338.1, and punitive damages, *id.* § 59.1-338(B), in certain circumstances. The Virginia Computer Crimes Act likewise authorizes attorneys' fees, *id.* § 18.2-152.12(B), (C), and court costs, *id.* § 18.2-152.12(A).

In short, regardless of the Agreement, Greer had a duty, under the statutes, not to misappropriate GMS's trade secrets nor to misuse its technology. Because both statutes impose "legal obligations [that are] independent of the contract," *Pyott-Boone Elecs., Inc.*

12

*v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 546 (W.D. Va. 2013), we think the Supreme Court of Virginia would find that neither claim "arises under" nor "relates to" the Agreement. *Cf., e.g.*, *Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir. 1978) (recognizing that, when sitting in diversity, a federal court must apply the law of a state's highest court or predict how the court would rule were the case before it).

GMS urges us to rely on another Supreme Court of Virginia case, *Paul Business Systems, Inc. v. Canon U.S.A., Inc.*, 397 S.E.2d 804 (Va. 1990). There, the court held that the plaintiff's business conspiracy and defamation tort claims were covered by the forum-selection clauses in the parties' agreements that applied to "any and all causes of action hereunder by and between the parties hereto." *Id.* at 806–08. The court found that the "hereunder" language covered the tort claims because the action "flow[ed] directly from the contracts." *Id.* at 808. That was in part because "the business relationship [between the parties] f[ound] its basis in the agreements." *Id.*

GMS says that because the Agreement likewise creates the parties' business relationship, its claims also arise under the Agreement. But the *Paul Business Systems* court also emphasized the close relationship between the tortious conduct and the agreement itself. As it remarked, the plaintiff alleged that the defendants conspired to injure its business by making defamatory statements that the termination of the parties' agreement was imminent. *Id.*

But here, neither the computer trespass claim nor the trade secrets claim implicates the Agreement in the same way. The Agreement says nothing about Greer's work

13

technology nor his duty to maintain the files on his computers after his termination. While the Agreement *does* mention his duty not to disseminate trade secret information, it's the statute—not the Agreement—that fills in the definition of "trade secret" and Greer's liability for misappropriation of trade secrets.

So we think *Paul Business Systems* is distinguishable and must be read together with the Supreme Court of Virginia's clear mandate in *Ulloa,* a case decided sixteen years later. In short, because, under *Ulloa*, GMS's statutory tort claims don't relate to the Agreement, it logically follows that they also don't arise from it.

That means then that the choice-of-law provision doesn't apply to GMS's trade secret and computer trespass claims. So, we return to Virginia's traditional choice-of-law rules. Greer's tortious conduct all happened in Colorado, so under the doctrine of *lex loci delicti*, Colorado law applies. The district court should have granted Greer's motion for judgment as a matter of law on these claims.

### III.

We arrive now at the final hurdle: the proper remedy. Under Federal Rule of Civil Procedure 50(e), we may "order a new trial, direct the trial court to determine whether a new trial should be granted, or direct the entry of judgment."

GMS asks us to remand the case for a retrial of its claims, this time applying Colorado law. Greer asks us to direct the entry of judgment in his favor.

We choose the Rule's second option, and so vacate the judgment and remand to the district court to determine whether a new trial should be granted. Though we acknowledge

14

that Colorado's statute of limitations may bar GMS's Colorado trade secrets claim, we leave it to the district court to decide the issue in the first instance.

And even if Colorado's computer crimes law doesn't provide a standalone civil cause of action, as Virginia's does, at least one court has held that a plaintiff can proceed on a Colorado negligence per se claim by alleging a violation of Colorado's computer crimes law. *See Integrity Applied Sci., Inc. v. Clearpoint Chems. LLC*, No. 1:18-cv-02235, 2020 WL 12584444, at *3 (D. Colo. Apr. 20, 2020). So even if GMS can't bring a direct claim for violating the Colorado statute, the district court should consider whether to grant GMS leave to amend its complaint to add a Colorado negligence per se claim, if GMS so desires.[2]

*VACATED AND REMANDED*

---

[2] We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.