**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 08-2106

WESTERN INSULATION, LP,

            Plaintiff - Appellee,

      v.

HAL MOORE; MELANIE MOORE,

            Defendants - Appellants.

Appeal from the United States District Court for the Eastern District of Virginia, at Richmond.   James R. Spencer, Chief District Judge.  (3:05-cv-00602-JRS)

Argued: December 4, 2009         Decided: January 22, 2010

Before NIEMEYER, MICHAEL, and GREGORY, Circuit Judges.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Judge Michael joined.  Judge Niemeyer wrote a separate opinion concurring in part and dissenting in part.

**ARGUED:**  John B. Simpson, MARTIN & RAYNOR, PC, Charlottesville, Virginia, for Appellants.   Paul James Kennedy, LITTLER MENDELSON, Washington, D.C., for Appellee.  **ON BRIEF:**  Ronald S. Sofen, GIBBS, GIDEN, LOCHER, TURNER & SENET, LLP, Los Angeles, California, for Appellants.   Stephen C. Tedesco, LITTLER MENDELSON, PC, San Francisco, California; Kathleen A. Goetzl, LITTLER MENDELSON, Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge.

After extensive litigation on liability and damages for the defendants' breach of their non-compete agreement concluded with a finding against the defendants, Hal and Melanie Moore, the District Court for the Eastern District of Virginia awarded Western Insulation, L.P. $218,705.90 in attorneys' fees and costs. The district court found the award of attorneys' fees proper because the non-compete agreement between the parties mandated the receipt of fees for actions to enforce a breach of its terms, and the court imposed the amount of fees it believed to be proportional to the relief obtained in the case. Because we find the contractual provision awarding attorneys' fees enforceable and the amount of fees awarded reasonable as to each defendant, we affirm the district court's order.

I.

We have previously discussed the factual background of the breach in this case in our opinions in Western Insulation, L.P v. Moore, No. 06-2028, 242 Fed. App'x 112 (4th Cir. 2007) (reversing the district court's award of damages and attorneys' fees and holding that the imposition of an injunction would not have harmed third parties), and Western Insulation, L.P. v. Moore, No. 08-1219, 316 Fed. App'x 291 (4th Cir. 2009) (affirming the district court's finding of nominal damages and

2

imposition of an injunction as to Melanie Moore). Thus, here we describe only the facts which have bearing on the award and reasonableness of attorneys' fees.

In March 2001, Western, Inc. ("Western") entered into an agreement with Hal Moore ("Hal") to purchase his company, Western Insulation, for over $41 million. As part of that agreement, Hal and his wife Melanie Moore ("Melanie") entered into an agreement not to compete with Western for a period of seven years following the completion of the transaction. Hal and Melanie did not, however, abide by their agreement. Contrary to the specific provisions of the agreement, Hal hired two former Western employees to work in his remaining business ventures. Additionally, Melanie acted as a surety for a $1.41 million line of credit to one of her former employees who formed the company American Insulation, a competitor of Western. For her guarantee of the loan, Melanie was given the right to buy up to ninety percent of American Insulation for $9,000 at the end of her non-compete period. Melanie also signed a second surety agreement for another former employee who formed Empire Insulation, also a competitor of Western.

Because of these breaches of the non-compete agreement, Western filed suit, and at the conclusion of a three-day bench trial, the district court found that both defendants had breached their covenants not to compete, among other violations,

3

and awarded $943,659 in damages and $361,660 in attorneys' fees. On appeal, however, we held that there was no basis for the district court to award damages for the breaches because the plaintiff had not shown any compensable harm. We thus vacated the district court's orders as to both damages and attorney's fees. Western Insulation, 242 Fed. App'x at 125. However, this Court did find that the plaintiff had established that Melanie had breached her covenant not to compete and Hal had breached his non-solicitation agreement, id. at 117-19, and the district court erred in denying the plaintiff an injunction against Melanie, id. at 124-25.

On remand, the plaintiff requested that, instead of compensatory damages, the court impose a permanent injunction against Melanie to prevent her from competing with Western and award nominal damages for the breaches of contract. The district court did so, finding a permanent injunction proper as to Melanie and awarding $100 in nominal damages from each defendant for the breaches of contract. This Court on appeal affirmed the result in its entirety. Western Insulation, 316 Fed. App'x at 300.

In a separate opinion, the district court again awarded attorneys' fees to the plaintiff: $165,414.83 from Melanie and $41,606.46 from Hal. The district court discussed each of the twelve Kimbrell's factors and determined that the award of a

4

permanent injunction as to Melanie and the finding of a breach of the contract by both parties entitled the plaintiff to some of its attorneys' fees.  See Barber v. Kimbrell's, Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978).  Western claimed that it spent $584,380.28 in attorneys' fees litigating the case in Virginia.[1]  In calculating the lodestar amount of fees for the case, the court broke the litigation fees down into the amount spent litigating each part of the case:  trial, appeal and remand.  Of the $348,365 spent litigating the case on the merits, the court awarded one quarter of the fees against Melanie, because it found half of the plaintiff's goal had been realized:  an award of damages against each defendant.  Of the $154,098 in fees spent to appeal the judgment to the Fourth Circuit in the first instance, the court awarded half the fees, split evenly between Hal and Melanie, because this Court had ruled in favor of injunctive relief and found breaches of the agreement.  Finally, of the $55,092.28 spent to litigate the case on remand, the court again awarded half the fees, for which only Melanie was responsible, because the plaintiff obtained the remedy of a permanent injunction against Melanie and nominal

---

[1] The district court earlier did not allow the plaintiff to collect fees from the original action brought in California. That case was voluntarily dismissed by the plaintiff and then re-filed in Virginia to comply with a contractual provision requiring that any action to enforce the agreement be brought in Virginia.

damages.   The court increased the lodestar amount by eight percent given the complexity of the case and arrived at the total fee award of $270,021.29.   This timely appeal followed concerning solely the award of attorneys' fees.

## II.

This Court reviews the district court's decision to award attorneys' fees under an abuse of discretion standard. McDonnell v. Miller Oil Co., 134 F.3d 638, 640 (4th Cir. 1998) (citing Colonial Williamsburg Found. v. Kittinger Co., 38 F.3d 133, 138 (4th Cir. 1994)).   The Moores present two issues upon appeal:  whether attorneys' fees were lawfully awarded, and if so whether the amount of fees was reasonable in light of the relief achieved against each defendant.   We address each issue in turn.

### A.

In the course of his briefing, Hal argued that there was no basis upon which the court could award fees against him as Western had only been awarded nominal damages from him.[2]   At oral argument, however, counsel for the Moores stated they did not contest the imposition of fees, only the reasonableness of the

---

[2] Melanie did not contest the fact that attorneys' fees could be awarded against her, only the reasonableness of the award.

6

amount awarded.  Nevertheless, we briefly describe the basis for awarding fees.

Hal's argument relies upon this Court's decision in Mercer v. Duke University, 401 F.3d 199 (4th Cir. 2005), and the Supreme Court's ruling in Farrar v. Hobby, 506 U.S. 103 (1992). Both of those cases held that when only nominal damages are awarded, attorneys' fees are not generally available. Mercer, 401 F.3d at 203 (quoting Farrar, 506 U.S. at 115). The Courts' view in those cases was that when the plaintiff fails to prove an essential element of damages—that any are warranted—the usual award is no fee at all. Farrar, 506 U.S. at 115. To determine whether a nominal damages case is the exceptional case meriting fees, the court must apply a three factor test. First, and most importantly, the court must compare the relief sought and the relief obtained. Mercer, 401 F.3d at 204. Second, the court evaluates the "significance of the legal issue on which the plaintiff prevailed." Id. at 206 (quoting Farrar, 506 U.S. at 122.) Finally, the court determines whether the litigation served a public purpose beyond the dispute between the parties. Id. at 207.

However, as argued by Western, there is a fundamental difference between this case and Mercer and Farrar: the source of the right to attorneys' fees. In the two cases cited by Hal, the plaintiff's entitlement to fees was a result of 42 U.S.C.

7

Section 1988, which gives the district court discretion to decide whether the plaintiff is entitled to fees in certain civil rights actions. In the language of Section 1988, the district court "may allow" recovery of fees. As such, any recovery of fees is plainly discretionary. This Court recognized in Mercer that the statute at hand merely made the plaintiff eligible for, not entitled to fees. 401 F.3d at 203. For this reason, the Moores' reliance on Mercer in their brief and at oral argument is misplaced. While it is true that the search for reasonableness in a fee award writ large is similar both here and in Mercer, the entitlement to fees here has nothing to do with the congressional policy of awarding fees in some civil rights actions.

By contrast, the source of Western's entitlement to fees in this case is the agreement itself, which the Moores breached. Paragraph Five of the Moores' non-compete agreement with Western provides that "in any action in law or in equity . . . to enforce this Agreement, the prevailing party in such action shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements . . . ." J.A. 299 (emphasis added).[3] As this case is a diversity action based on state contract law, the contract, including its provisions on attorneys' fees, is to be

---

[3] All citations to "J.A. __" refer to the Joint Appendix provided by the parties in this case.

interpreted using state law. The Virginia Supreme Court has defined "prevailing party" for fees and costs purposes broadly as the party in whose favor the judgment is entered in the case. Richmond v. City of Henrico, 41 S.E.2d 35, 41 (Va. 1947). This definition of prevailing party certainly includes the party for whom judgment is entered in the form of nominal damages. Further, in Ulloa v. QSP, the Virginia Supreme Court held that the trial court properly awarded attorneys' fees to QSP for its breach of contract claim against Ulloa, per a contractual provision awarding fees, even though the jury, after finding that Ulloa breached the contract, declined to award any damages for the breach. 624 S.E.2d 43, 49 (Va. 2006). Noting that "parties are free to draft and adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute," the court upheld the fee award for the breach of contract claim. Id. (citing Mullins v. Richlands Nat'l Bank, 403 S.E.2d 334, 335 (Va. 1991)).

This case therefore appears to be controlled by Virginia law allowing the award of attorneys' fees to a prevailing party, broadly defined, when those fees are mandated by contractual provision between the parties. There is no reason why this provision in the contract should not be enforced against both Melanie and Hal. The question then is whether those fees awarded were reasonable, an issue to which we now turn.

The central argument Hal and Melanie make upon appeal is that even if the award of fees was proper, it was unreasonable. Hal argues that requiring him to pay $41,606.46 in fees when only $100 in nominal damages was assessed against him is presumptively unreasonable. Melanie argues that the district court incorrectly awarded "virtually" the same amount of attorneys' fees against her when the plaintiff received an injunction and nominal damages as it did when the plaintiff had received over a $1 million judgment.[4] This is an error, she argues, because the district court incorrectly valued the issuance of an injunction and the recovery of significant compensatory damages as equally important to the plaintiff and splitting the fees equally between claims was not proper. For the reasons enumerated below, we find both of these arguments unavailing.

In reviewing a fee award, this Court gives substantial deference to the district court which tried the case because of that court's "intimate knowledge of the efforts expended and the value of the services rendered." Kimbrell's, 577 F.2d at 226.

---

[4] In its first opinion awarding fees in this case, the district court did not mention how the fees were to be divided, presumably because the fees were awarded after the court found that the defendants violated the non-compete agreement jointly. Melanie calculates her half of the fee award in the first instance to be $186,672.29.

Even if awarding fees is mandated by a contractual provision, the amount awarded must still be reasonable.  <u>Mullins</u>, 403 S.E.2d at 335.  To determine the reasonableness of an award, this Court has held that a district court must make "detailed findings of fact with regard to the factors considered." <u>Kimbrell's</u>, 577 F.2d at 226.  These factors must include "the time consumed, the effort expended, the nature of the services rendered, and other attending circumstances."[5]  <u>Mullins</u>, 403 S.E.2d at 335 (citing <u>Beale v. King</u>, 132 S.E.2d 476, 478 (Va. 1963)).  From its consideration of those factors, the court should determine how many hours were reasonably required for the litigation and then calculate the lodestar amount using an hourly rate.  <u>Miller Oil</u>, 134 F.3d at 640.  The lodestar rate may then be adjusted for the particular factors and difficulties of the case at hand.

---

[5] The factors suggested by this Court for the district court to consider are:  "(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases."  <u>Kimbrell's</u>, 577 F.2d at 226 n.28.

The district court in this case explained its rationale for awarding fees against Hal and Melanie at great length, discussing each of the twelve factors enunciated by the court in Kimbrell's. See supra n.5. The most salient factor for the district court was the complexity of the case given the number of motions for summary judgment, extensive discovery litigation, and bicoastal nature of the suit. Additionally, even though Western "obtained only one meaningful form of relief—an injunction against Melanie," the court found the issues so intertwined that it was impossible to view the work done to achieve the injunction as separable from the rest of the litigation. J.A. 335. The Supreme Court held in Hensley v. Eckerhart, that when a suit involves several claims that have a core of related facts, division of hours between claims can be an exercise in futility. 461 U.S. 424, 434-35 (1983). Therefore, the "district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. at 434. Additionally, this Court has held that a district court evaluating the degree of success on the merits between successful and unsuccessful claims should not look to the motives of the plaintiff as guidance, meaning the court should not attempt to determine what the plaintiff would have thought more important. Mercer, 401 F.3d at 205. The comparison should

12

be with the relief "sought" not the relief "most important" to the plaintiff.  Id. (emphasis added).  The court must therefore view the entirety of the suit objectively.

In this case, the plaintiff sought both damages and an injunction in his original complaint against the Moores.  Concerning an injunction, the plaintiff sought three types of preliminary and permanent injunction:  to prevent further unfair competition, contractual breaches, and misappropriation of trade secrets.  Western also sought compensatory damages at the amount proved at trial.  The complaint also, of course, sought a finding of a breach in order to receive either remedy.

At the conclusion of the liability and damages portion of the proceedings before the district court, the plaintiff received nominal damages and an injunction.  Though it was not all the relief sought in the complaint, Western certainly was the prevailing party under Virginia law.  It cannot be said from the face of the complaint or the remedy achieved, therefore, that injunctive relief was not an important remedy.  Additionally, while no compensable damages were awarded, the suit did result in a finding of liability.  Valuing the damages in unfair competition cases can be extremely difficult.  See PADCO Advisors, Inc. v. Omdahl, 179 F. Supp. 2d 600, 612 (D. Md. 2002) ("It is for this reason that courts have routinely enforced covenants not to compete, as it is nearly impossible to

13

quantify the amount of damage caused when former employees work for direct competitors. In order to protect an employer's business interests, such as a loss of clients and good will, covenants not to compete that require specific performance are enforceable."). Thus, the achievement of a permanent injunction in an unfair competition case is not negligible. In fact, it is a significant result in that it enforces the original agreement between the parties.

Melanie attempts to turn precedent on its head by advancing an argument which evaluates the importance of each kind of relief. This is plainly erroneous where we have stated that the relief is to be viewed objectively and where district courts routinely grant permanent injunctions in non-competition cases. Viewing this case objectively, the plaintiff achieved significant relief.

Given the relief achieved against each defendant, the court then calculated the lodestar amount for each defendant individually. As regards Hal, the court awarded one fourth of the amount of fees Western incurred when appealing the case to the Fourth Circuit, $41,606.46 of $154,098 after the eight percent lodestar adjustment.[6] Hal was not responsible for any of

---

[6] The eight percent adjustment occurred because the court felt the lodestar amount should be increased slightly given the length and complexity of the case.

the fees for litigation before the district court at trial or on remand. The district court found the award of fees for the litigation before the Fourth Circuit particularly proper because this Court held that Hal had violated his agreement not to compete, constituting a final judgment on the issue of Hal's breach. We find it was not an abuse of discretion for the district court to order Hal to pay one-quarter of the fees for the appeal which found both Hal and Melanie at fault. The fact that Hal was adjudged in violation of his non-compete agreement, even though only nominal damages were awarded, made Western a prevailing party against him and entitled the plaintiff to fees. Thus, the district court was reasonable in awarding a select portion of the fees to Hal when the fees concerned the part of the litigation where his fault was determined.

As regards Melanie, the district court ordered her to pay one fourth of the fees incurred to try the case, one fourth incurred to litigate the case before the Fourth Circuit, and one half incurred to litigate the case on remand, a total of $174,750.81 after the lodestar adjustment. The court's logic was that the plaintiff had achieved half of the relief sought at trial (damages), half sought on appeal (injunction and finding of breach), and half on remand (permanent injunction). This division of fees was certainly not an abuse of discretion when Western achieved substantial relief, though not all of the

relief sought, such that an award of all fees was not proper. In the aggregate, the fee award from Melanie cannot be said to be excessive when the plaintiff spent $557,555.30 litigating the case to a successful conclusion.  Therefore, the district court did not err in the fee award from Melanie.

## III.

This Court therefore affirms the decision of the district court below.

AFFIRMED

16

NIEMEYER, Circuit Judge, concurring in part and dissenting in part:

After nearly four years of litigation, both Hal Moore and Melanie Moore were found to have breached their non-compete agreements with Western Insulation, LP, and each was ordered to pay $100 in nominal damages. In addition, Western obtained an injunction against Melanie.

Each non-compete agreement provided that the "prevailing party" in an action to enforce it "shall be entitled to reasonable attorneys' fees," and the district court ordered Hal to pay $41,606.46 in attorneys fees and Melanie to pay $165,414.83. The court reasoned that Hal should pay one-fourth of the fees that Western incurred during an earlier appeal to our court and that Melanie should pay: one-fourth of the fees that Western incurred to try the case; one-fourth of the fees that Western incurred during the first appeal; and one-half of the fees Western incurred on remand. The district court also included in the amounts assessed against both Hal and Melanie an 8% enhancement because the case was "lengthy and complex."

The majority opinion affirms the attorneys fee awards, finding them to be reasonable.

I concur in the majority's opinion to the extent that it affirms the base award (without the 8% enhancement) assessed against Melanie. But I conclude that the assessment of $41,606

17

against Hal is excessive, given that Western recovered only $100 in nominal damages from him.  I also conclude that the 8% enhancement is an abuse of discretion.  Thus, I would reduce the assessment against Melanie to $153,161.88, and I would vacate the assessment against Hal and remand for the district court to determine a reasonable amount of attorneys fees for Hal to pay in light of Western's limited victory against him.

To begin, I agree with the majority that because Western's claim to attorneys fees stems from a contract that specified it was to be interpreted and enforced in accordance with Virginia law, Virginia law governs the award of fees in this case. Additionally, I agree that under Virginia law, Western is the "prevailing party" and is accordingly entitled to attorneys fees from the Moores pursuant to the parties' contract.  But Western is entitled to only reasonable attorneys fees.  With respect to the assessment against Hal, the question thus becomes what fee is <u>reasonable</u> when the plaintiff's only recovery was nominal damages.

The Supreme Court has addressed this issue, noting generally that "'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'"  <u>Farrar v. Hobby</u>, 506 U.S. 103, 114 (1992) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 436 (1983)).  Indeed, the Court has specifically noted that "[w]hen a plaintiff recovers

18

only nominal damages because of his failure to prove an essential element of his claim for monetary relief, the only reasonable fee is usually no fee at all." Id. at 115. Although these pronouncements of the Supreme Court came in the context of reviewing fees awarded pursuant to 42 U.S.C. § 1988, the principles nonetheless provide guidance here and strongly suggest that it is unreasonable to order Hal, from whom the plaintiff has only recovered nominal damages of $100, to pay $41,606 in attorneys fees.

Similarly, our precedents demonstrate that when a plaintiff is entitled to reasonable attorneys fees, the district court must account for the plaintiff's limited success in calculating the fee, "examin[ing] the size of the proposed attorney's fee . . . award in comparison with the total damage award." McDonnell v. Miller Oil Co., 134 F.3d 638, 641 (4th Cir. 1998) (internal quotation marks and citation omitted) (vacating district court's award of nearly $20,000 in fees pursuant to a mandatory fee-shifting statutory provision to a plaintiff who otherwise recovered only nominal damages); see also Carroll v. Wolpoff & Abramson, 53 F.3d 626, 629-31 (4th Cir. 1995) (affirming the district court's award of $500 in attorneys fees where plaintiff obtained only $50 in damages).

Most importantly, the Supreme Court of Virginia has held that a reasonable fee should reflect "the results obtained" by

19

the prevailing party.  Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998).  The majority opinion correctly describes Ulloa v. QSP, Inc., 624 S.E.2d 43, 49 (Va. 2006), as holding that a plaintiff who established that the defendant breached the parties' contract but who recovered no monetary damages for the claim was nonetheless entitled to attorneys fees pursuant to a contractual provision.  But the court in that case ultimately reversed the trial court's substantial award of attorneys fees and remanded so that the trial court could reconsider the amount, noting that the plaintiff's degree of success was a significant consideration in evaluating the reasonableness of the award and that "the results obtained by QSP in its litigation against Ulloa can be characterized, at best, as marginally successful."  Id. at 50.

As in Ulloa, we should in this case remand so that the district court can reconsider the amount of attorneys fees in light of Western's Pyrrhic victory against Hal.[1]

---

[1] Interestingly, the district court at first recognized that any fee award imposed upon Hal must reflect Western's failure to recover any meaningful form of relief from him, observing that "[t]he fact that Western obtained very little relief against Hal suggests that an award of fees against him is not warranted." J.A. 334.  Despite this acknowledgment, the district court imposed a substantial award against Hal.  In my view, it is necessary to remand so that the district court can simply act upon its earlier recognition that the fee award must bear some relation to the relief recovered.

The majority opinion, in contrast, finds that the district court ordered Hal to pay a reasonable amount of attorneys fees, approvingly noting that the district court found it appropriate to require Hal to pay one-fourth of the fees Western incurred in the appeal before us "because this Court held that Hal had violated his agreement not to compete, constituting a final judgment on the issue of Hal's breach." Ante at 15. Yet, our declaration of Hal's fault during the earlier appeal was not the primary rationale provided by the district court for its decision to order Hal to pay one-fourth of Western's fees for that appeal. Instead, the district court purported to justify the award by noting that "the Fourth Circuit ruled in Western's favor on the issue of injunctive relief with respect to both defendants."[2]  J.A. 339; see id. ("Since the Fourth Circuit's

---

[2] The district court's reliance on this court's ruling on injunctive relief in the first appeal also demonstrates the unreasonableness of the fee award. In Western Insulation, L.P. v. Moore, 242 F. App'x 112, 124-25 (4th Cir. 2007), the court did not hold or even suggest that Western was entitled to injunctive relief against Hal; it merely "reverse[d] the ruling of the district court that injunctive relief should not be awarded because the relief requested would impact third parties not before the court" and "remand[ed] to the district court to determine in the first instance whether to award such relief," expressing "no opinion on whether any particular form of injunctive relief -- or, indeed, any injunctive relief at all -- would be appropriate."  I would accordingly hold that the district court abused its discretion by basing the award against Hal solely on fees spent obtaining the Fourth Circuit's reversal of the district court's denial of injunctive relief, when the
(Continued)

decision reversing the Court's order on the issue of injunctive relief affected both Hal and Melanie, they will share the burden of paying Western for the cost of litigating the case before the Fourth Circuit"). Indeed, there was good reason for the district court not to have focused on our finding that Hal had breached the agreement in making its fee calculation. While we did describe as a breach of contract Hal's hiring of two former Western employees, the issue was not disputed in the appeal before us. See Western Insulation, L.P. v. Moore, 242 F. App'x 112, 118 n.5 (4th Cir. 2007) ("The district court found that Hal's hiring of these employees constituted a breach of his Non-Compete but that Western failed to prove any damages therefrom. The Moores do not dispute that these hirings constituted breaches, and Western does not challenge the determination that it failed to prove any damages therefrom").

Therefore, in this case, I cannot agree that it was reasonable for the district court to have ordered Hal to pay $41,606.46 in attorneys fees because that was a portion of the fees incurred at the stage "of the litigation where his fault was determined." Ante at 15.

_____

district court on remand again refused to order injunctive relief against Hal.

With respect to the 8% enhancement of the fee award based on the case's length and complexity, our court and the Supreme Court have recognized that "as a general rule, the novelty and complexity of a lawsuit will be reflected in the number of billable hours" and that "'[n]either complexity nor novelty of the issues, therefore, is an appropriate factor in determining whether to increase the basic fee award.'"  Daly v. Hill, 790 F.2d 1071, 1078 (4th Cir. 1986) (quoting Blum v. Stenson, 465 U.S. 886, 898-99 (1984)).  I would, accordingly, vacate the 8% enhancement of Western's fee award against Melanie, reducing the award assessed against her from $165,414.83 to $153,161.88, and direct that such an enhancement not be considered by the district court in determining a reasonable attorneys fee award in Western's favor against Hal.