Present: Lacy, Keenan, Koontz, Kinser, Lemons, Agee, JJ., and Compton, S.J.

RENÉ ULLOA

OPINION BY
v. Record No. 050095     JUSTICE LAWRENCE L. KOONTZ, JR.
January 13, 2006

QSP, INC.

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Catherine C. Hammond, Judge


In this appeal, we consider whether the trial court erred in sustaining a jury verdict in favor of the plaintiff for breach of contract and in granting an award of $691,099.05 in attorneys' fees, costs, and expenses to the plaintiff when the jury awarded no damages on any of its claims.

BACKGROUND

QSP, Inc., a subsidiary of Reader's Digest Association, Inc., provides goods and services to schools and other non-profit organizations to assist them in conducting their fundraising campaigns. QSP conducts its business through sales representatives who work within a prescribed territory to develop and maintain business relationships with school officials and other customers. QSP hired René Ulloa as such a sales representative in July 1992.

Upon being employed by QSP, Ulloa signed an employment contract which provided that he "recognize[d] and acknowledge[d] that the goodwill and patronage of the accounts of QSP . . . are solely the property of QSP and that information concerning the identity and size of and contacts at such accounts and the identity of other employees of QSP . . . are the confidential business information of QSP."  To protect QSP's business information and interests, the employment contract included confidentiality, no-solicitation, and non-competition provisions that would apply to Ulloa for twelve months after he stopped working for QSP.

These contractual provisions bound Ulloa in various ways.  Ulloa could not disclose the identity, size, and contacts of accounts, the identity of QSP employees, or QSP's business practices.  He also could not contact or solicit for his own benefit any QSP customer that he serviced, work for any QSP competitor in his territory, or commit any act that would harm QSP's goodwill or disparage QSP's relationships with its customers.

The employment contract also contained a provision which is of particular significance in this appeal.  Pursuant to that provision, in relevant part, Ulloa agreed

2

that "if I violate this Agreement . . . I will be responsible for all attorneys' fees, costs and expenses incurred by QSP by reason of any action relating to this Agreement."  (Emphasis added.)

Ulloa serviced customers in a territory encompassing over thirty different localities and stretching from Charlottesville in the west through Richmond to the Northern Neck region in the east.  Ulloa was very successful generating sales in his territory and enjoyed considerable financial success working for QSP.  Ulloa's success made his services marketable within the fundraising industry, and he began to explore employment opportunities with other companies.  On April 14, 2003, Ulloa resigned from QSP and went to work for Great American Opportunities, Inc. (Great American), a direct competitor of QSP in the fundraising business.

QSP learned that Ulloa had appropriated confidential information pertaining to QSP's business and had contacted his QSP accounts in violation of his employment contract. As a result, QSP filed a bill of complaint in the Circuit Court of Henrico County against Ulloa.  The bill of complaint contained, among others, three claims:  (1) breach of contract; (2) statutory business conspiracy under

3

Code § 18.2-499 et seq.; and (3) misappropriation of trade secrets in violation of the Uniform Trade Secrets Act, Code § 59.1-336 et seq. QSP sought injunctive relief, monetary damages, and an award of reasonable attorneys' fees and costs.

Ulloa, in turn, concluded that QSP had contacted his QSP accounts before he had resigned and had told them that he was no longer servicing these accounts. Consequently, Ulloa filed a cross-bill containing, among others, a statutory business conspiracy claim and a breach of contract claim. QSP did not seek a hearing for a preliminary injunction. By order entered on March 9, 2004, the case was transferred from the chancery to the law side of the trial court's docket.

The parties conducted extensive discovery. Each stage of the litigation was protracted and contentious; numerous motions were filed and hearings held. In the process, attorneys' fees for both parties accrued in substantial amounts. At the start of the May 3, 2004 jury trial, the parties agreed to a procedure for determining any award of attorneys' fees. The parties agreed that each party would present evidence regarding the asserted amount of accrued attorneys' fees, and the jury would decide only whether

4

attorneys' fees should be awarded. The parties further agreed that the trial court ultimately would fix the amount of any fee award in a post-trial proceeding. QSP presented evidence that it had incurred attorneys' fees in the amount of "approximately" $770,000 through April 2004.

During the trial, QSP introduced evidence that supported its claims against Ulloa. Specifically, that evidence showed that Ulloa, two days prior to his resignation, had faxed to Great American a hand-drawn map of his QSP territory containing names and directions to QSP accounts and the amounts and types of sales made to these accounts. Subsequently, in a letter ruling on post-trial motions, the trial court characterized the map as "clear proof of breach and deception by Ulloa." QSP also introduced evidence that Ulloa had given Great American a copy of his QSP customer list, the sales breakdown for his QSP territory in Virginia, and information concerning QSP's business in Florida.

At the conclusion of the evidentiary stage of the trial, the parties agreed to a set of jury instructions. Without objection from Ulloa, the trial court instructed the jury on QSP's breach of contract claim as follows:

> The issues in this case are was there a contract between the parties. If there was, did

Mr. Ulloa breach it. If QSP is entitled to recover, what is the amount of its damages, if any. On these issues, QSP has the burden of proof.

You shall find your verdict for QSP if they have proved by a greater weight of the evidence that there was a contract and Mr. Ulloa breached the contract.

You shall find your verdict for Mr. Ulloa if QSP fails to prove any of the two elements.

Counsel jointly drafted a special verdict form which was submitted to the jury with the agreement of both parties. The top section of the form listed QSP's three claims and in adjacent blanks permitted the jury to render its verdict whether QSP had proven a particular claim by recording a check mark in the "yes" blank or the "no" blank. The next section provided spaces for the jury to put dollar amounts indicating the jury's award of damages on each claim. The last section provided a space for the jury to put a check mark indicating the jury's award of reasonable attorneys' fees on each claim. The remaining portion of the verdict form used the identical format for Ulloa's counterclaims.

The jury returned verdicts for QSP on all of its claims against Ulloa, and a verdict for Ulloa on his business conspiracy claim against QSP by recording a check mark in the appropriate "yes" blanks. The jury rendered a

6

"no" verdict on Ulloa's breach of contract claim. The jury specifically awarded "0" damages to both parties on each of their successful claims. However, the jury also checked the appropriate spaces awarding reasonable attorneys' fees to both parties on these claims.

The parties filed eight post-trial motions which the trial court addressed in an opinion letter dated August 20, 2004. The trial court first set aside the business conspiracy verdicts for both parties.[1] As a result no verdict in favor of Ulloa or Ulloa's corresponding claim for an award of attorneys' fees remained before the trial court.

The trial court then addressed Ulloa's motion to set aside the breach of contract verdict in favor of QSP. Ulloa contended that QSP could not recover for breach of contract because the jury awarded no damages on that claim. The trial court denied Ulloa's motion. The court reasoned, in part, that attorneys' fees were recoverable by QSP as

---

[1] Consistent with Code § 18.2-500, the jury instructions required the jury to find proof of injury and proof that the injured party suffered damages as a predicate to a verdict on a business conspiracy claim. The jury's finding of such a conspiracy without damages in each instance was contrary to the jury instructions. Under Rome v. Kelly Springfield Tire Co., 217 Va. 943, 948, 234 S.E.2d 277, 281 (1977), the verdicts were invalid as a matter of law.

damages in this case based on the particular language of the parties' employment contract regarding the payment of QSP's attorneys' fees.

Finally, the trial court addressed QSP's motion for attorneys' fees, costs, and expenses.  Over Ulloa's objection, the trial court granted QSP's motion for a total award of $691,099.05.[2]  The trial court noted that the jury had returned favorable verdicts for QSP on each of its three claims against Ulloa, concluding "any of which supports an award of attorneys' fees."  With regard to the breach of contract and the misappropriation of trade secrets claims, the trial court found that QSP had an "unambiguous right" to recover attorneys' fees pursuant to the attorney-fee provision in Ulloa's employment contract. Regarding the amount of fees QSP requested, the trial court stated that it examined the time records of QSP's counsel and the supporting expert opinion as to the services

---

[2] The attorneys' fees requested by QSP were $638,000 and the costs and expenses were $53,099.05.  As we have noted, the employment contract refers to "attorneys' fees, costs and expenses" while Ulloa refers to the amount awarded as "attorneys' fees."  The obvious distinction is not significant to our resolution of this appeal.  For brevity we will simply refer to the total award of $691,099.05 as "attorneys' fees" hereafter.

involved and found that the services and charges were reasonable.

The trial court entered its final judgment order, incorporating its prior opinion letter, on October 12, 2004. We awarded Ulloa this appeal on the issues whether, in the absence of an award for damages, the trial court erred in sustaining the jury's verdict for breach of contract, and whether the trial court erred in awarding attorneys' fees under the circumstances of this case.

## DISCUSSION

We first address the question whether the jury's verdict against Ulloa for breach of contract absent a finding of damages should have been set aside by the trial court.

We have recently stated that "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." Filak v. George, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). Notwithstanding this bedrock principle, it is equally well-settled that parties to a contract may specify the events or pre-conditions that will trigger a

9

party's right to recover for the other party's breach of their agreement. Indeed, we have remained " 'committed to the view that parties may contract as they choose so long as what they agree to is not forbidden by law or against public policy.' " Coady v. Strategic Resources, Inc., 258 Va. 12, 17, 515 S.E.2d 273, 275 (1999) (quoting Chesapeake & Potomac Telephone Co. v. Sisson & Ryan, Inc., 234 Va. 492, 503, 362 S.E.2d 723, 729 (1987)). No statute or public policy is implicated by the contract at issue here that would countervail the parties' freedom to eliminate damages as a required element of a breach of contract action. Accordingly, the focus of our analysis is to determine whether the parties in fact agreed to modify the traditional elements of a breach of contract action so as to permit QSP to obtain a valid breach of contract verdict in the absence of a finding of damages.

In that regard, Ulloa is bound by his agreement to the jury instructions given to the jury as the law of this case. Simmons v. Miller, 261 Va. 561, 576 n.3, 544 S.E.2d 666, 675 n.3 (2001); King v. Sowers, 252 Va. 71, 77, 471 S.E.2d 481, 484 (1996); Owens-Illinois, Inc. v. Thomas Baker Real Estate, Ltd., 237 Va. 649, 652, 379 S.E.2d 344, 346 (1989) ("It is well settled that instructions given

10

without objection become the law of the case and thereby bind the parties in the trial court and this Court on review.").  With regard to whether a valid breach of contract verdict would require proof of damages, the jury was instructed that "[y]ou shall find your verdict for QSP if [it] proved by a greater weight of the evidence that there was a contract and Mr. Ulloa breached the contract." The jury was instructed further that "[y]ou shall find your verdict for Mr. Ulloa if QSP failed to prove any of the two elements."  (Emphasis added.)  As so instructed, the jury was not required to determine whether QSP had proven damages prior to rendering a verdict in favor of QSP. Thus, under the law of this case, the jury was not required to determine that QSP had proven damages in order to render its verdict in favor of QSP on its breach of contract claim.  The record clearly establishes that there was a valid employment contract between the parties and that Ulloa breached that contract.  Accordingly, the trial court did not err in sustaining the breach of contract verdict in favor of QSP.

We turn now to the issue whether the trial court erred in awarding attorneys' fees as requested by QSP pursuant to the parties' contract in the amount of $691,099.05 under

11

the circumstances of this case.  The thrust of Ulloa's

contentions is that the trial court erred in granting any

award to QSP because the jury awarded "0" damages to QSP

and, therefore, QSP was not a "prevailing party" on any of

its claims against Ulloa.

QSP responds with three contentions.  Initially, QSP

contends that it was not required under the terms of the

parties' contract to obtain a judgment that Ulloa had

breached that contract or violated the Uniform Trade

Secrets Act in order to be entitled to an award of

attorneys' fees.  Next, QSP contends that its favorable

verdicts on those two claims "provide an independent basis

for an award of fees" under the parties' contract.

Finally, QSP contends that:

> The trial court also properly awarded QSP
> its fees associated with its action against Ulloa
> for business conspiracy.  Under the Agreement,
> Ulloa was obligated to pay QSP's fees for any
> legal action related to his violation of the
> Agreement.  As noted in QSP's submissions to the
> trial court, each of these counts were intimately
> intertwined and depended upon a common factual
> basis.  Thus, it was entirely proper for the
> trial court to make its fee award.

Under the so-called "American rule," a prevailing

party generally cannot recover attorneys' fees from the

losing party.  Lee v. Mulford, 269 Va. 562, 565, 611 S.E.2d

349, 350 (2005).  However, parties are free to draft and

adopt contractual provisions shifting the responsibility for attorneys' fees to the losing party in a contract dispute. Mullins v. Richlands National Bank, 241 Va. 447, 449, 403 S.E.2d 334, 335 (1991). In this case, the fee-shifting provision in the parties' contract clearly placed the burden upon Ulloa to pay reasonable attorneys' fees "incurred by QSP in any action relating to this agreement." QSP's breach of contract claim unquestionably qualifies as "any action relating" to the parties' contract under the language of that fee-shifting provision and as we have already stated, QSP obtained a favorable jury verdict on that claim based on the law of the case. Therefore, with regard to QSP's breach of contract claim, the trial court did not err in determining that QSP was entitled to attorneys' fees pursuant to the parties' contract.

We are of opinion, however, that QSP's misappropriation of trade secrets claim does not qualify as "any action relating" to the parties' contract as contemplated by the contract's fee-shifting provision. The Uniform Trade Secrets Act provides a statutory remedy for the misappropriation of trade secrets, including the award of attorneys' fees when it is shown that the misappropriation is "willful and malicious." Code

13

§ 59.1-338.1.  A successful claim under the Act, including

an award of attorneys' fees, is therefore not dependent

upon provisions contained in a contract between the

parties.  Here, under the procedure adopted by the parties,

QSP and Ulloa submitted the issue of an award of attorneys'

fees to be determined under the fee-shifting language of

their contract.  That language expressly limits "any

action" to one "relating" to their agreement and thereby

excludes an independent action such as one under the Act.

(Emphasis added.)  Accordingly, the trial court erred in

determining that QSP was entitled to attorneys' fees

pursuant to the parties' contract.[3]

The question then becomes whether the amount granted

by the trial court was reasonable under the circumstances

of this case.  In addressing that question, we have

explained that "a fact finder may consider, inter alia, the

time and effort expended by the attorney, the nature of the

services rendered, the complexity of the services, the

value of the services to the client, the results obtained,

whether the fees incurred were consistent with those

---

[3] Because the attorneys' fees at issue were awarded under
the fee-shifting provisions of the parties' contract, the issue
of an award of attorneys' fees under the Act is not before us in
this appeal.

14

generally charged for similar services, and whether the services were necessary and appropriate." Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998). The amount of the fee award rests within the sound discretion of the trial court, and we give deference to the judgment of the trial court upon appellate review. Coady, 258 Va. at 18, 515 S.E.2d at 276. However, we have stated that under contractual provisions such as these a party is not entitled to recover fees for work performed on unsuccessful claims. Chawla, 255 Va. at 624, 829 S.E.2d at 833.

With regard to our resolution of the question of reasonableness of the amount of the award of attorneys' fees to QSP, we disagree with Ulloa's contention that QSP was not a prevailing party on its breach of contract claim. The jury returned its verdict on that claim in favor of QSP and, under the procedure agreed to by the parties, indicated on the verdict form that it found QSP to be entitled to reasonable attorneys' fees on that claim. Armed with that verdict, QSP was the prevailing party. See Sheets v. Castle, 263 Va. 407, 413, 559 S.E.2d 616, 620 (2002) (adopting Black's Law Dictionary definition of

15

"prevailing party" as a "party in whose favor a judgment is rendered, regardless of the amount of damages awarded"); see also Chase v. DaimlerChrysler Corp., 266 Va. 544, 548–49, 587 S.E.2d 521, 523 (2003) (equating "prevailing party" with "successful party").

In this case, however, the results obtained by QSP in its litigation against Ulloa can be characterized, at best, as marginally successful. QSP obtained a favorable verdict on its breach of contract claim, but it was awarded no monetary damages. Additionally, the trial court had imposed monetary sanctions against QSP as a result of its conduct during discovery.

In addition to the results obtained by QSP, it is equally significant to the reasonableness of the amount of the award, as QSP rightfully concedes, that this amount was based in part on fees associated with QSP's business conspiracy claim against Ulloa.[4] The jury verdict obtained by QSP on this claim was set aside by the trial court. Clearly then QSP was not successful on that claim and was,

---

[4] In its memorandum in support of its motion filed in the trial court for an award of $691,099.05, QSP maintained that a "reasonable allocation of fees" within that total would be "$430,500 for the Breach of Contract claim; $50,500 for the Business Conspiracy claim; [and] $50,500 for the Trade Secrets

16

therefore, not entitled to recover any amount of attorneys' fees associated with prosecuting that claim against Ulloa. Similarly, as we have explained above, QSP was not entitled under the parties' contract to recover any amount of attorneys' fees associated with prosecuting its trade secrets claim against Ulloa.

Under these circumstances, the amount of the award totaling $691,099.05 cannot stand, and we will reverse the judgment of the trial court granting an award in that amount. We will remand the case to the trial court so that it may reconsider the amount to be awarded to QSP. In doing so, we stress that we do not question the hourly rates charged by QSP's attorneys. We are not persuaded, however, that simply because all of QSP's claims "were intimately intertwined and depended upon a common factual basis" that QSP was relieved of the burden to establish to a reasonable degree of specificity those attorneys' fees associated with its breach of contract claim against Ulloa.

CONCLUSION

For these reasons, we will reverse the judgment of the trial court and remand this case with instructions that the

claim." We express no view of the reasonableness of that allocation.

trial court reconsider the amount of its award of attorneys' fees consistent with the views expressed in this opinion.

                                        Affirmed in part,
                                        reversed in part,
                                        and remanded.


JUSTICE LEMONS, with whom JUSTICE AGEE and SENIOR JUSTICE COMPTON join, concurring in part and dissenting in part.

I concur with the majority opinion except with respect to the award of attorney's fees and I respectfully dissent from the portion of the opinion that limits the attorney's fee award and remands the case for further proceedings.

We begin with the proposition that these well-represented parties chose the language of their contract. Familiar principles govern the interpretation of contract disputes. When the terms of the contract are clear and unambiguous, a court construes those terms according to their plain meaning. American Spirit Ins. Co. v. Owens, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001); Bridgestone/Firestone, Inc. v. Prince William Square Assocs., 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995). Additionally, this Court "will not insert by construction, for the benefit of a party, a term not express in the contract." American Spirit, 261 Va. at 275, 541 S.E.2d at

18

555 (quoting <u>Lansdowne Development Co. v. Xerox Realty Corp.</u>, 257 Va. 392, 400, 514 S.E.2d 157, 161 (1999)).

Words that the parties employ in the agreement are normally given their usual, ordinary, and popular meaning. <u>D.C. McClain, Inc. v. Arlington County</u>, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995). No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly. <u>Id.</u> Finally, this Court construes contracts as a whole, without giving emphasis to isolated terms. <u>American Spirit</u>, 261 Va. at 275, 541 S.E.2d at 555.

The award of attorney's fees in this case is governed by the language used by the parties in their contract and our prior interpretation of the breadth of that language. Paragraph 5 of the "Confidentiality, No-Solicitation and Non-Competition Agreement," provided that:

> [René Ulloa] will be responsible for all attorneys' fees, costs and expenses incurred by QSP by reason of any action relating to this Agreement, and that QSP will be entitled to such additional relief that a court deems appropriate.

Consequently, our focus must be upon the meaning of the phrase "any action relating to this Agreement." Significantly, the majority engages in no analysis of the

19

meaning of the phrase; however, our prior cases are not only instructive, they are dispositive.

In McMullin v. Union Land & Management Co., 242 Va. 337, 410 S.E.2d 636 (1991), we considered the scope of an arbitration clause contained in a partnership agreement and held that the clause was broad enough to cover a partner's claim for services. Id. at 341-42, 410 S.E.2d at 638-39. The issue in dispute was whether the claim conformed to a provision in the agreement stating that partners would be compensated for their services to the partnership only if the partners contracted for such compensation. We stated that the language "relating to this agreement" is very broad, and that such a clause " 'is not limited to disputes over the terms of the contract or to disputes arising during the performance of the contract.' " 242 Va. at 341, 410 S.E.2d at 638 (quoting Maldonado v. PPG Industries, Inc., 514 F.2d 614, 616 n.6 (1st Cir. 1975)). Rather, " '[b]road language of this nature covers contract-generated or contract-related disputes between the parties however labeled.' " Id. (quoting Maldonado, 514 F.2d at 616). Furthermore, we held that the language "relating to" a contract is " 'broader than a clause covering claims 'arising out of' a contract.' " Id. (quoting International

<u>Talent Group, Inc. v. Copyright Management, Inc.</u>, 629 F.Supp. 587, 592 (S.D.N.Y. 1986)). We ultimately concluded that because the litigants must refer to the "services" provision in resolving the controversy, the dispute fell within the language of the arbitration clause covering any claim "relating to this Agreement." <u>Id.</u> at 341-42, 410 S.E.2d at 638; <u>see</u> <u>Signal Corp. v. Keane Fed. Sys., Inc.</u>, 265 Va. 38, 44-45, 574 S.E.2d 253, 256-57 (2003) (holding that an action for breach of a 'no-hire' provision was within the scope of the arbitration provision's language "arising under or related to" because resolving the conflict required referring to the contract).

Considering the language used by the parties in their contract, the broad scope of that language has already been confirmed by this Court in prior decisions. However, the majority looks to Code § 59.1-338.1 in support of its conclusion that the award of attorney's fees for the misappropriation of trade secrets claim "does not qualify as 'any action relating' to the parties' contract as contemplated by the contract's fee-shifting provision." The majority then concludes that "[a] successful claim under the Act, including an award of attorney's fees, is therefore not dependent upon provisions contained in a

contract between the parties." However, QSP is not seeking fees under the Act, but pursuant to their contract. The error of the majority's conclusion is evident by its failure to cite, much less adhere to, the provision of Code § 59.1-341, which states in part:

B. This chapter does not affect:

1. Contractual remedies whether or not based upon misappropriation of a trade secret; or
2. Other civil remedies that are not based upon misappropriation of a trade secret; or
3. Criminal remedies, whether or not based upon misappropriation of a trade secret.

This Code provision clearly contradicts the majority's conclusion that a "successful claim under the Act, including an award of attorneys' fees, is therefore not dependent upon provisions contained in a contract between the parties." Apparently, the majority concludes that any attorney's fees awarded because of work on a Uniform Trade Secrets Act claim must be controlled by the Act itself and precludes an award on any other basis than the terms of the Act. However, proper analysis and application of the Uniform Trade Secrets Act indicates that, pursuant to Code § 59.1-341(B)(1), the parties may contract for an award of attorney's fees, as they have in the instant case, and the

22

contract will be enforced irrespective of the attorney's fees provision of the Act. It is particularly important to note that Code § 59.1-341(B)(1) provides for enforcement of such contractual remedies "whether or not based upon misappropriation of a trade secret."

In conclusion, QSP should have the benefit of its bargain and the contractual terms should be enforced as we have previously construed the language contained therein. The term "related to" has broader scope than "arising out of." Clearly, the trade secrets claim was "related to" the contract. Indeed, the trade secrets were what the contract was all about. Nothing in the Uniform Trade Secrets Act prohibits the enforcement of the contract provision on attorney's fees. Indeed, the Act itself affirms the duty of this Court to enforce the contract as written. Additionally, the statutory conspiracy claim was "related to" the contract. In my view there is no reason to remand the case for modification of the attorney's fee award. I would affirm the trial court's judgment in its entirety.