# CIRCUIT COURT OF THE CITY OF CHESAPEAKE

Joyner's Mechanical, Inc.

v.

William G. Miller,
SMJ Enterprises, L.L.C.,
and Miller Mechanical, Inc.

May 24, 2012

Case No. (Civil) CL11-1379

By Judge John W. Brown

On Wednesday December 14, 2011, counsel for all parties appeared before this Court and presented arguments on Defendants' previously filed Demurrer and Motion to Dismiss. The Court received the transcript of that hearing on January 10, 2012. On January 23, 2012, counsel for the Plaintiff submitted a Brief in Opposition to Demurrer and Motion to Dismiss ("Brief 1"). Counsel for the Defendant submitted a Reply Brief in Support of Demurrer and Motion to Dismiss on February 6, 2012 ("Brief 2"). Plaintiff's counsel submitted a Response to Defendants' Reply Brief in Support of Demurrer and Motion to Dismiss on February 14, 2012 ("Brief 3"). The Court has considered the evidence, arguments, and briefs of counsel and makes the following decision.

## Facts

Plaintiff, Joyner's Mechanical, Inc. ("Joyner's"), provides heating, ventilation, and air conditioning ("HVAC") services to a variety of structures in Virginia and the surrounding states. Joyner's was formed on February 28, 2006, when its predecessor company, Joyner's Holdings Corporation, entered into an Agreement for Purchase and Sale of Assets ("Purchase Agreement") with Atlantic Mechanical, Inc., then wholly owned by AMC, Inc., which in turn was wholly owned by Defendant William G. Miller. Under the Purchase Agreement, Joyner's acquired substantially all of

Atlantic Mechanical's assets, including intangible assets such as goodwill, customer lists, "information base," and trademarks. Article 6.4 of the Purchase Agreements states that, "[a]t the closing, Holdings and each of: (i) Seller and (ii) each of the Stockholders will enter into a Noncompetition Agreement. . . ."

On that same day, February 26, 2008, Joyner's Holdings Corporation and Defendant William G. Miller entered into a Noncompetition, Noninterference, and Nonsolicitation Agreement ("Noncompetition Agreement") by which Miller agreed to certain restrictive covenants, including an agreement to refrain from disclosing Joyner's trade secrets and other confidential information for a certain period of time, an agreement to refrain from competing with Joyner's, and an agreement to refrain from soliciting Joyners' customers or employees. Paragraph 8 of the Noncompetition Agreement states that:

> The Seller shall agree that any such dispute relating to or in respect of this Agreement, its negotiation, execution, performance, subject matter, or any course of conduct or dealing or actions or conduct under or in respect of this Agreement, shall be submitted to, and resolved exclusively pursuant to arbitration . . . in Chesapeake, Virginia . . . subject to the substantive laws of the Commonwealth of Virginia . . . and binding on the parties.

Subsequent to these agreements, Miller was allegedly employed by Joyner's until January 2008. Miller allegedly had a relationship with SMJ Enterprises, a company that obtained a license to provide HVAC services in Virginia in February 2008. Plaintiff alleges that Miller improperly disclosed confidential information to SMJ, solicited seven employees away from Joyner's from March 6 to May 1, 2010, continued to solicit other employees to leave Joyner's for SMJ, and solicited customers and accounts away from Joyner's.

On May 27, 2011, Plaintiff filed suit in the Court against William G. Miller for (1) and (2) Breach of Contract and the Covenant of Good Faith and Fair Dealing, (3) and (5) Breach of Contract, and (4) Breach of Contract Regarding Non-Solicitation of Employees. Plaintiff sued all Defendants for (6) and (7) Intentional Interference with Existing and Prospective Contracts, (8) Statutory Conspiracy, (9) Commercial Defamation a.k.a. Trade Libel, and (10) Violation of the Uniform Trade Secrets Act.

Defendants demurred and moved to dismiss these claims by motion on July 6, 2011. In the motion to dismiss, Defendants assert that this Court is without jurisdiction over the claims against Defendant Miller because of the mandatory arbitration clause in the Noncompetition Agreement. During oral arguments on December 14, 2011, and in Brief 2, defense counsel

modified the motion and admitted that there is no way to fit the defamation claim against Miller into the mandatory arbitration clause. Therefore, the Court has considered the applicability of paragraph 8 of the Noncompetition Agreement to all counts against Miller except (9), Commercial Defamation, a/k/a Trade Libel.

*Law*

Virginia has adopted the Uniform Arbitration Act, and the relevant provision contained in Virginia Code § 8.01-581.01 states that:

> A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable, and irrevocable, except upon such grounds as exist at law or in equity for the revocation of any contract. This article also applies to arbitration agreements between employers and employees or between their respective representatives unless otherwise provided in the agreement. . . .

A party cannot be compelled to arbitrate a dispute that is not arbitrable under the agreement. *See Weitz v. Hudson*, 262 Va. 224, 546 S.E.2d 732 (2001). However, the plain language of the parties' contract to arbitrate a dispute governs. *See TM Delmarva Power, L.L.C. v. NCP of Va., L.L.C.*, 263 Va. 116, 557 S.E.2d 199 (2002).

*Decision*

Plaintiff has made various arguments in opposition to the applicability of the mandatory arbitration clause, none of which the Court finds persuasive. First, Plaintiff argues that the Noncompetition Agreement is "expressly incorporated by reference in the asset purchase agreement" and, therefore, the law of New York governs. *See* Transcript, p. 10. As stated above, the relevant language is that, "[a]t the closing, Holdings and each of: (i) Seller and (ii) each of the Stockholders will enter into a Noncompetition Agreement. . . ." There is certainly a reference to the Noncompetition Agreement, but the Purchase Agreement is devoid of any express language of incorporation by reference. The Purchase Agreement and Noncompetition Agreement are two separate and distinct contracts, and the Court thus does not find it necessary to decide between potentially conflicting arbitration agreements and choice of laws provisions.

Next, in Brief 1, Plaintiff argues that nonsignatories to a contract, in this case, SMJ and Miller Mechanical, cannot benefit from the arbitration

clause. The Defendants, however, have not attempted to compel arbitration of the claims against SMJ and Miller Mechanical and have conceded that those claims will remain in this Court.

Furthermore, in Brief 1, Plaintiff argues that judicial economy and the specter of inconsistent judgments weigh in favor of trying all of the claims together in this Court. The Court finds that the public policy that favors clear and unambiguous arbitration clauses outweighs these other concerns. *See TM Delmarva Power, L.L.C., supra.*

Finally, in Brief 2, Plaintiff cites *Ulloa v. QSP, Inc.*, 271 Va. 72 (2006), for the proposition that Joyner's claim under the Uniform Trade Secrets Act is not arbitrable. In that case, the parties submitted the issue of an award of attorneys' fees in their dispute under the Uniform Trade Secrets Act to the jury to be determined pursuant to the fee-shifting language of their contract. *Id.* at 78. The Court reversed, holding that "the Uniform Trade Secrets Act provides a statutory remedy for the misappropriation of trade secrets, including the award of attorneys' fees, when it is shown that the misappropriation is "willful and malicious." A successful claim under the Act, including an award of attorneys' fees, is therefore not dependent upon provisions contained in a contract between the parties." *Id.* at 81. Due to the fact that the contract provision for attorney's fees excluded an independent action for attorneys' fees under the Act, the award of attorneys' fees for the trade secret claim under the contract was reversible error. *Id.* at 82. The Court stated the Plaintiff's misappropriation of the trade secrets claim did not qualify as "any action relating to" the parties' conduct as contemplated by the contract's fee shifting agreement. *Id.*

Plaintiff argues that the holding in *Ulloa* is broad; a contract cannot exclude *any* independent action under the Uniform Trade Secrets Act. This Court declines to adopt such an expansive reading. The contract at issue in *Ulloa* violated the Uniform Trade Secrets Act because § 59.1-338.1 of that Act deals specifically with attorneys' fees. There is no such specific provision in the Act that deals with arbitration. To the contrary, a later section of the Act states that "This chapter does not affect . . . [c]ontractual remedies whether or not based on misappropriation of a trade secret. . . ." *See* Virginia Code § 59.1-341. The Court finds that parties to a contract can agree to submit a trade secret dispute to arbitration without violating the Uniform Trade Secrets Act.

The Court holds the all claims against Defendant William G. Miller except the Commercial Defamation claim are subject to the mandatory arbitration clause in paragraph 8 of the Noncompetition Agreement. Paragraph 8 is clear and broad; any dispute relating to or in respect of the Noncompetition Agreement *shall* be submitted to arbitration. Claims (1), (2), (3), (4), (5), (6), (7), (8), and (10) all fall within the ambit of this arbitration provision. Further, the Court finds that the Plaintiff cannot avoid

arbitration by filing suits against third parties or adding counts upon which relief is sought which are not related to the subject contract.

Pursuant to Virginia Code § 8.01-581.02(D), the Court stays the entire action, including the demurrers to the claims for Intentional Interference with Existing and Prospective Contracts, Statutory Conspiracy, and Violation of the Uniform Trade Secrets Act against Defendants SMJ Enterprises, L.L.C., and Miller Mechanical, Inc., and the demurrer to the Commercial Defamation, a/k/a Trade Libel, claim against all Defendants.