Present:  Kinser, C.J., Lemons, Goodwyn, Millette, Mims, and
Powell, JJ., and Koontz, S.J.

DEWBERRY & DAVIS, INC.
                                              OPINION BY
v.  Record No. 111661    SENIOR JUSTICE LAWRENCE L. KOONTZ, JR.
                                          September 14, 2012
C3NS, INC., ET AL.

                FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                           R. Terrence Ney, Judge

     In this appeal, we consider whether the circuit court

erred in applying an attorneys' fees provision of a contract.

The court determined that the plaintiff, the prevailing party

on both its claim for compensation under the contract and the

defendant's counterclaim for the plaintiff's alleged breach of

the contract, was entitled to only a nominal award of one

dollar in attorneys' fees for its defense of the counterclaim

because the defendant had a "good faith" basis for alleging

the breach.  We further consider an assignment of cross-error

asserting that any award of attorneys' fees on the

counterclaim was subject to a further provision in the

contract for calculating fees in an action to collect

compensation owed under the contract.

                              BACKGROUND

     The material facts are not in dispute and may be

summarized in the following manner.  On May 12, 2008, Dewberry

& Davis, Inc. ("Dewberry"), an engineering firm, entered into

a contract with C3NS, Inc. to prepare a survey and site plan

for the construction of a building on property owned by C3 Holdings, LLC in an industrial park located in Louisa, Virginia. The building would house a tire recycling plant to be operated by C3RS, Inc.[1]

"Attachment B" to the contract included certain "standard terms and conditions" including a provision that

> [C3] shall furnish [to Dewberry] all plans, drawings, surveys, deeds and other documents related to the services in your possession and shall inform us in writing about all special criteria or requirements related to Services . . . . [Dewberry] may obtain deeds, plats, maps and any other information filed with or published by any governmental entity . . . . [C3] agree[s] to give prompt notice to [Dewberry] of any development or occurrence that affects the scope or timing of Services.

Also included in Attachment B was the following provision concerning the payment of attorneys' fees and expenses in the event of litigation arising from the contract ("attorneys' fees provision"):

> The losing party shall pay the winning party's reasonable attorneys' fees and expenses for the prosecution or defense of any cause of action, claim or demand arising under this Agreement in any court or in arbitration. The attorneys' fees payable to us for the collection of compensation you owe us shall be twenty-five percent of any judgment or award against you and our attorneys' fees, expenses, and collection costs.

---

[1] C3NS, Inc., C3 Holdings, LLC, and C3RS, Inc. are related entities. We will refer to them collectively as "C3."

2

Under the terms of an addendum signed by C3 on June 15, 2008, Dewberry was required to relocate the proposed building site from the location originally designated by C3 to "allow[] for a closer proximity to the Dominion Virginia Power (DVP) service area" within the industrial park so that the building would "receive power service from DVP." The addendum indicated that C3 was acquiring additional acreage in the industrial park in order to facilitate this change.

Prior to the execution of the addendum, Dewberry received from Rappahannock Electric Cooperative ("Rappahannock Electric"), the other electric service provider for the industrial park, materials which purported to show the division of the service areas of the two providers. Unknown to Dewberry, the materials were inaccurate. However, using these materials, Dewberry prepared a building site plan that did not meet the criteria of the June 15, 2008 addendum.

Also prior to the execution of the addendum, C3 had received from DVP an aerial photograph which accurately reflected the service areas of the two electric service providers. This photograph showed that no portion of the building site, including the additional acreage acquired by C3, was within DVP's service area. C3, which apparently was unaware of the photograph's significance, failed to provide it to Dewberry as required by the contract.

When C3 learned that the site plan prepared by Dewberry would not place the building within the DVP service area, it withheld payment to Dewberry on the balance owed under the contract. Dewberry subsequently obtained a mechanic's lien on the property to secure this debt.

On May 21, 2009, Dewberry filed in the Circuit Court of Fairfax County, C3's principal place of business, a complaint against C3 seeking to collect the balance owed on the contract. On November 10, 2009, C3 filed in the same circuit court a complaint against Dewberry alleging, among other things, breach of contract and seeking 1.5 million dollars in damages allegedly incurred as a result of the tire recycling plant not being located within DVP's service area. Both parties sought an award of attorneys' fees and expenses under the contract. Ultimately, the suits were consolidated for trial with C3's complaint nominated as a counterclaim.

Following an extended period of discovery and pre-trial motions, the case was set for a bench trial, limited to the issue of liability on the complaint and counterclaim. In this regard, the court had entered a consent order reflecting the parties' agreement that neither party would be required to present evidence concerning attorneys' fees until after a judgment had been rendered on the merits of the asserted claims. The consent order stated that "[a]ttorney[s'] fees

and expenses <u>may</u> be awarded in accordance with" the attorneys' fees provision of Attachment B.  (Emphasis added.)

The trial commenced on February 28, 2011, and evidence in accord with the above recited facts was received by the circuit court.  At the conclusion of the trial on March 10, 2011, the court entered an order awarding Dewberry judgment for $49,459.85 on its claim.  In its summation, the court concluded that even if Dewberry had breached the contract by failing to discover the inaccuracy in the information obtained from Rappahannock Electric and, thus, not providing a site plan in accord with the criteria of the June 15, 2008 addendum, C3 could not recover on its counterclaim.  The court reasoned that this was so because C3 had been the first to breach the contract by failing to provide Dewberry with the aerial photograph provided by DVP.  The court further stated that it would consider an award of attorneys' fees, "[b]ut it strikes [the court] that this was a legitimate, good-faith dispute, a difference of opinion, and without making any decision, [the court is] not likely to shift fees absent any other evidence presented."

On April 15, 2011, citing the attorneys' fees provision, Dewberry filed a motion, supported by numerous billing records and other documentation, for an award of attorneys' fees and expenses for both the prosecution of its complaint and the

5

defense of the counterclaim. Dewberry calculated the award due for collection of compensation owed under the second sentence of the attorneys' fees provision to include 25% of the judgment in addition to attorneys' fees and expenses of $5,795.50, while it claimed $338,356.60 in attorneys' fees and expenses for successfully defending the counterclaim.

In response, C3 contended that although the attorneys' fees provision required that "[t]he losing party shall pay . . . reasonable attorneys' fees and expenses," the use of the term "may" in the consent order had modified the contract and allowed the circuit court the discretion to decline awarding attorneys' fees to Dewberry. (Emphasis added.) C3 noted that the court had observed that the suit involved a "legitimate, good-faith dispute," and, thus, it contended that an award of attorneys' fees would be a "windfall for Dewberry," while penalizing C3 for pursuing a legitimate, though ultimately unsuccessful, claim for breach of contract.

C3 further contended that the attorneys' fees provision limited any recovery by Dewberry to that available under its second sentence. C3 maintained that where a contract provides for an award of liquidated cost of collection damages that includes attorneys' fees, such an award necessarily includes the cost of the defense of any counterclaim.

6

Lastly, C3 contended that Dewberry's request for attorneys' fees included amounts that were "unrecoverable" because these fees related to "claims" on which Dewberry had not prevailed. These "claims" were "unsuccessful defenses [that] were outside the scope of the [attorneys' fees] clause or were unreasonable," including a pre-trial motion for partial summary judgment and motions to compel discovery.

In response, Dewberry maintained that the consent order was not intended as a novation of the contract, but merely provided for the manner of conduct of the trial. Dewberry further contended that because it had prevailed on all issues regarding liability, it was entitled to recover all attorneys' fees related to both the prosecution of its complaint and the defense of the counterclaim and that it would be an abuse of discretion for the circuit court not to enforce the attorneys' fees provision as written.

Thereafter, the circuit court held a hearing on the motion for attorneys' fees. On June 14, 2011, the court issued an order with an incorporated opinion letter. The court first concluded that "the only logical purpose of the [c]onsent [o]rder was to bifurcate the attorneys' fees issue from the trial on the merits." Nonetheless, the court further concluded that "the 'may' versus 'shall' argument is ultimately a distinction without a difference [because, while]

7

the language of the [c]ontract is mandatory, under Virginia law, this Court must still be satisfied that fees should be awarded."

The circuit court then discussed the nature of the counterclaim, concluding that "this was a good faith dispute." Thus, although "C3 [did] not dispute" that "Dewberry's fees for its defense of C3's [c]ounterclaim standing alone are fair and reasonable," the court nonetheless concluded that "given the nature of the dispute, shifting [the burden of attorneys' fees] to C3 is not warranted." However, recognizing that the attorneys' fees provision was "mandatory," the court awarded Dewberry attorneys' fees of $18,160.46 for the prosecution of its complaint and one dollar for the defense of the counterclaim.[2] The circuit court did not address C3's arguments that Dewberry could recover only under the second sentence of the attorneys' fees provision and that Dewberry was barred from recovering fees associated with the pre-trial motions on which it had not prevailed.

Dewberry filed a motion for reconsideration of the award of one dollar as attorneys' fees and expenses for its successful defense of the counterclaim. Dewberry maintained

---

[2] The record is not clear regarding how the amount of the award was calculated with regard to Dewberry's complaint. However, that issue is not presented in this appeal.

that the court had improperly rewritten the parties' contract through its "adoption of [a] 'good faith dispute'" standard. Dewberry asserted that it was entitled to an award of reasonable attorneys' fees for its successful defense of C3's counterclaim, regardless of whether C3 had a good faith basis for asserting that claim.

Having previously suspended the order entered June 14, 2011, the circuit court issued a final order with an incorporated opinion letter on July 8, 2011 denying Dewberry's motion for reconsideration. The court stated that while its prior opinion letter had "take[n] into consideration the nature of the dispute, it was to explain the circumstances that led to the result of the dispute." In the court's view, although "Dewberry may have prevailed in the trial . . . it still plainly breached its contract . . . because it failed to provide C3 access to [DVP's service area] as it had agreed." Thus, because both parties had breached the contract and Dewberry had prevailed on C3's counterclaim only because C3 had been the first to breach the contract, the court reasoned that "based on the result of the dispute, the . . . decision to award Dewberry its attorneys' fees of $1.00 is reasonable."

We awarded Dewberry an appeal on the following assignment of error:

The trial court erred by abusing its discretion in awarding Dewberry only $1.00 in attorneys' fees and expenses for its successful defense of [C3's] Counterclaim in contravention of clear contract language directing recovery by a prevailing party of reasonable attorneys' fees and expenses for the prosecution or defense of any claim.

We also awarded an appeal to C3 on its assignment of cross-error:[3]

The trial court incorrectly construed the contract when it failed to find that the second sentence of section twenty two of the standard terms of the Contract, which states "The attorneys' fees payable to us [Dewberry] for the collection of compensation you [C3] owe shall be twenty-five percent of any judgment or award against you and our attorney's fees, expenses, and collection costs," did not cover all of Dewberry's Attorneys' fees, including defense of counterclaims filed in response to Dewberry's action.

### DISCUSSION

At no time have the parties contended that the attorneys' fees provision is ambiguous, nor is there any dispute that Dewberry was the "winning party," as that term is used in the contract on both its complaint and C3's counterclaim. Under these circumstances, this Court applies a de novo standard of review to interpret an unambiguous provision of a contract. PMA Capital Ins. Co. v. US Airways, Inc., 271 Va. 352, 357-58, 626 S.E.2d 369, 372 (2006). Moreover, the contract is to be

---

[3] C3 also filed a cross-appeal addressing the merits of the underlying case. We refused C3's petition for appeal by order. C3NS, Inc. v. Dewberry & Davis, Inc., Record No. 111778 (December 19, 2011).

"construed as written, without adding terms that were not included by the parties."  Id. at 358, 626 S.E.2d at 372.

"Under the so-called 'American rule,' a prevailing party generally cannot recover attorneys' fees from the losing party."  Ulloa v. QSP, Inc., 271 Va. 72, 81, 624 S.E.2d 43, 49 (2006).  This rule, however, does not prevent parties to a contract from adopting provisions that shift the responsibility of attorneys' fees to the losing party in disputes involving the contract.  Id.

A prevailing party who seeks to recover attorneys' fees pursuant to a contractual provision such as the one at issue here has the burden to present a prima facie case that the requested fees are reasonable and necessary.  Chawla v. BurgerBusters, Inc., 255 Va. 616, 623, 499 S.E.2d 829, 833 (1998); see also Seyfarth, Shaw, Fairweather & Geraldson v. Lake Fairfax Seven Ltd. P'ship, 253 Va. 93, 96, 480 S.E.2d 471, 473 (1997).  We have identified several factors that are relevant to the determination of this issue:

> [A] fact finder may consider, inter alia, the time
> and effort expended by the attorney, the nature of
> the services rendered, the complexity of the
> services, the value of the services to the client,
> the results obtained, whether the fees incurred were
> consistent with those generally charged for similar
> services, and whether the services were necessary
> and appropriate.

11

Chawla, 255 Va. at 623, 499 S.E.2d at 833; accord Ulloa, 271 Va. at 82, 624 S.E.2d at 49.

Dewberry asserts that the circuit court misapplied the guidance given in Chawla by inferring that the "whether the services were necessary and appropriate" language permitted the court to consider the "nature of the dispute" and apply a "good faith" requirement to limit the prevailing party's recovery. Dewberry contends that a trial court's consideration of the reasonableness of the attorneys' fees requested should be limited to the substance and relationship of the fees to the prosecution or defense of a claim, without consideration of whether the opposing party had a good faith basis for taking an adverse position at trial. Thus, because the court determined that the fees and expenses Dewberry submitted for the defense of C3's counterclaim were otherwise "fair and reasonable," Dewberry asserts that the court abused its discretion in limiting Dewberry's recovery of attorneys' fees for the defense of the counterclaim because it found that the counterclaim arose from a "legitimate dispute." We agree.

In its June 14, 2011 opinion letter, the circuit court expressly stated that it was limiting Dewberry's recovery because "given the nature of the dispute, shifting [the burden of attorneys' fees] to C3 is not warranted." Although the court subsequently clarified that it had "take[n] into

12

consideration the nature of the dispute . . . to explain the circumstances that led to the <u>result</u> of the dispute," the result of the dispute is relevant only to determining under the contract which party is the "winning party" and therefore entitled to seek an award of attorneys' fees.  Moreover, the court reasoned that not shifting the burden of the attorneys' fees to C3 was "warranted" because Dewberry had prevailed on the counterclaim only by virtue of the affirmative defense that C3 had first breached the contract.  This reasoning is plainly wrong.  It is not in accord with the contract provision providing that the "losing party shall pay the winning party's reasonable attorneys' fees and expenses for the . . . defense of any . . . claim . . . under this Agreement."

A trial court may, when determining the reasonableness of the fees and expenses claimed by a prevailing party, deduct from the award any fees and expenses associated with claims and defenses the court views to be frivolous, spurious, or unnecessary.  <u>Chawla</u>, 255 Va. at 624, 829 S.E. 2d at 833; <u>Ulloa</u>, 271 Va. at 83, 624 S.E.2d at 50.  However, "[c]ourts will not rewrite contracts; parties to a contract will be held to the terms upon which they agreed."  <u>The Bank of Southside Virginia v. Candelario</u>, 238 Va. 635, 640, 385 S.E.2d 601, 603 (1989).  Here, the award of one dollar as reasonable

13

attorneys' fees essentially required the circuit court to rewrite the parties' contract. It takes no analytical leap to conclude that an award of one dollar was not contemplated by the parties' contract. Accordingly, we hold that the circuit court abused its discretion in limiting Dewberry's recovery of attorneys' fees and expenses for its successful defense of C3's counterclaim to one dollar.

We turn now to consider C3's assignment of cross-error. The thrust of C3's various assertions is that Dewberry was limited to one award of attorneys' fees rather than two and the amount of that award was limited by the provisions of the second sentence in the attorneys' fee provision of the parties' contract.

C3 maintains that Dewberry's complaint was "for the collection of compensation" as contemplated by the second sentence of the attorneys' fees provision and would have included the costs of the necessary efforts to dispute C3's claim that Dewberry had breached the contract and, thus, excused or mitigated C3's lack of payment of compensation otherwise due to Dewberry. C3 contends that the costs of these efforts would have been incurred by Dewberry even if C3 had not also sought an "affirmative recovery" through its counterclaim. C3 thus maintains that because there was only one action for the collection of compensation, Dewberry was

14

limited to one award of attorneys' fees and the award was limited to "twenty-five percent of any judgment . . . against [C3] and [Dewberry's] attorneys' fees, expenses, and collection costs."

C3's assertions are flawed on multiple grounds. First, C3's assertion that Dewberry would have been required to respond to the claim that it had breached the contract even if C3 had not asserted its counterclaim and sought an "affirmative recovery" belies the fact that C3 actually sought to recover damages for Dewberry's alleged breach that were well in excess of those claimed in Dewberry's complaint. The counterclaim did not seek merely to mitigate or alleviate C3's liability, but to impose a significant liability on Dewberry as well. By increasing the magnitude of the amount in controversy, C3 necessarily increased the costs to defend a claim that otherwise would have been presented only as an affirmative defense to a much smaller amount in controversy.

Second, the nature of the counterclaim expanded the scope of the litigation far beyond a collection of compensation dispute. An examination of the record shows that the greater portion of the lengthy discovery process and the nine-day trial was devoted to the prosecution and defense of the counterclaim. In this context, there was never any real dispute that Dewberry was owed compensation under the

15

contract, only whether it had breached the contract in a manner that would bar it from collecting the balance due. Indeed, while a claim of $338,356.60 in attorneys' fees for contesting an affirmative defense to the claim for compensation of less than one-sixth that amount would be excessive and unreasonable, a different calculus would apply where the same amount is expended in defending against a claim for $1,500,000 in damages.

Accordingly, we do not agree with C3 that because the facts asserted to support its counterclaim might also have served as a defense to the complaint, the entire matter was "for the collection of compensation" and, thus, all fees to be awarded would be subject to the second sentence of the attorneys' fees provision. We hold that the defense of the counterclaim was not part of the collection action and the circuit court did not err in failing to find that an award of attorney's fees and expenses to Dewberry on the counterclaim would be controlled by the second sentence of the attorneys' fees provision.[4]

Having determined that the circuit court erred in limiting the award of attorneys' fees and expenses for

---

[4] In light of this holding, we need not address C3's further assertion concerning the method for calculating an award under the second sentence of the attorneys' fees provision.

Dewberry's successful defense of C3's counterclaim to one dollar and that the calculation of the award is not subject to the "for the collection of compensation" clause of the attorneys' fees provision, we must now consider what result should obtain in this Court.  Dewberry contends that because the court determined that the claim for $338,356.60 in attorneys' fees and expenses was "fair and reasonable," we should remand with instruction to award that amount.  Dewberry further requests that upon remand it be permitted to seek an award of attorneys' fees and expenses for the prosecution of this appeal and defense of the assignment of cross-error.

C3 responds that we should remand the case to the circuit court with "instruction regarding [the] attorneys' fees that can be awarded against" C3, but without specifically directing the court to award the amount claimed by Dewberry.  C3 conceded at trial that it was not challenging the reasonableness of the hourly billing rate nor the number of hours billed by Dewberry's counsel for defense of the counterclaim.  However, C3 maintains that it did not concede the necessity of all the charges at trial and that the court made no express ruling on this issue.  The record supports this contention.  During oral argument of this appeal, counsel explained that "there had been no reason" to contest the necessity of individual elements of the fees in light of the

court's ultimate award of only one dollar. Accordingly, counsel expressly requested at the conclusion of oral argument that the issue be remanded with instruction for the circuit court to receive evidence as to whether all the fees claimed were <u>necessary</u> to the defense of the counterclaim.

In its opposition to Dewberry's motion for attorneys' fees, at trial C3 clearly contested the necessity of some of the fees claimed, specifically asserting that Dewberry should not recover for unsuccessful motions related to discovery and an unsuccessful motion for partial summary judgment on the counterclaim. While we have held that a party entitled to recover attorneys' fees may do so only for those issues on which it prevailed and which relate to the contract, <u>Ulloa</u>, 271 Va. at 83, 624 S.E.2d at 50, heretofore we have not required the party to show that it was successful in every aspect of its prosecution or defense related to those issues on which it prevailed, and we decline to adopt such a rule now.

Rather, the question is whether, given the factors set forth and explained in <u>Chawla</u>, <u>Ulloa</u>, and their progeny, the fees were reasonable, necessary and appropriate to the particular circumstances of the litigation. <u>Chawla</u>, 255 Va. at 623, 499 S.E.2d at 833; Ulloa, 271 Va. at 82, 624 S.E.2d at 49. Merely because a party loses a pre-trial motion related

18

to an issue on which the party ultimately prevails does not mean that the pre-trial motion was not appropriate at the time it was filed and under the circumstances of the case. It is the province of the trial court to determine whether fees for these services were necessary.

We are of opinion that the circuit court's finding that "[attorneys'] fees for [Dewberry's] defense of [C3's] counterclaim standing alone are fair and reasonable" did not resolve the issue whether all of those fees were necessary. "Fair" and "reasonable," the terms used by the court in its opinion letter, are synonymous in meaning. Here, no evidence was received concerning the necessity of those fees and no express ruling on that issue was made by the court. Undoubtedly this was because of the court's erroneous ruling limiting the recovery of attorneys' fees on the counterclaim to one dollar. Moreover, we are further of opinion that the trial court should be afforded the opportunity to exercise its discretion to resolve this issue in the first instance rather than for this Court to resolve the issue in this appeal. Accordingly, we hold that while the reasonableness of the hourly rate of Dewberry's claim for attorneys' fees and expenses will not be subject to challenge upon remand, the court may receive evidence on the issue whether all the fees charged with respect to the defense of the counterclaim were

necessary applying the guidance found in Chawla and Ulloa as discussed herein.

CONCLUSION

For these reasons, we will reverse the judgment of the circuit court awarding one dollar in attorneys' fees and expenses to Dewberry for its successful defense of C3's counterclaim. We will remand the case to the circuit court for further proceedings to determine a proper award to Dewberry for attorneys' fees and expenses for its successful defense of C3's counterclaim. Additionally, upon remand, Dewberry may submit to the circuit court a claim for additional attorneys' fees and expenses, and the court shall award such fees and expenses that it determines to be reasonable and necessary for the successful prosecution of this appeal and defense of C3's assignment of cross-error thereto.

Reversed and remanded.